**Sarah Shepard ROMBOM, Plaintiff,**

v.

**UNITED AIR LINES, INC., Joyce Cunningham and K.S. Burbech, Defendants.**

No. 93 Civ. 5660 (SS).

United States District Court, S.D. New York.

Nov. 7, 1994.

Field, Lomenzo & Turret, P.C., New York City, for plaintiff (David A. Field, of counsel).

Graham & James, New York City, for defendant (Carroll E. Dubuc and C. Raymond Nelson, of counsel).

## OPINION AND ORDER

SOTOMAYOR, District Judge.

In this diversity action, defendant United Air Lines, Inc. ("United") moves for summary judgment, pursuant to Fed.R.Civ.P. 56(b), to dismiss plaintiff Sarah Shepard Rombom's state tort claims as preempted by the Federal Aviation Act, 49 U.S.C.App. §§ 1301–1557 (1976 and 1994 Supp.). For the reasons discussed below, defendant's motion is granted in part, and denied in part.

### Background

On August 3, 1992, plaintiff, Sarah Shepard Rombom ("Rombom"), boarded a United flight in Chicago destined for New York. Rombom and her travelling companion Lani Adelman ("Adelman"), however, were removed from the plane before it departed and arrested by the Chicago Police Department.

Both sides agree on the following facts. Plaintiff claims that after she and Adelman boarded the flight, they engaged in conversation with three men seated in the row behind them. The group became friendly, photographs were taken, and one of the men massaged Adelman's hand between the seats. Affidavit of Sarah Shepard Rombom ("Rombom Aff."), sworn to December 23, 1993, at ¶ 3; Affidavit of Lani Adelman ("Adelman Aff."), sworn to December 22, 1993, at ¶ 4. As the aircraft left the gate, a flight attendant had to stop reading the flight safety instructions to ask Rombom, Adelman, and the three men to be quiet. Rombom Aff. at ¶ 3; *Plaintiff's Memorandum of Law in Opposition to the Motion of Defendant United Airlines, Inc. for Summary Judgment* ("Plaintiff's Opposition Memorandum") at 3.

The parties disagree about what then ensued. United claims that the group refused to comply with the flight attendant's requests to be quiet, and continued to act in a rambunctious manner during and after the safety instructions. The flight attendant sought assistance from the head flight attendant, defendant Joyce Cunningham, who notified the pilot, defendant K.S. Burbech of the situation. Burbech instructed Cunningham to tell the offending passengers that they would be removed from the aircraft if they failed to behave properly. Cunningham relayed this message to Rombom and her associates, who allegedly reacted to this ultimatum by becoming even more ill-mannered. Affidavit of Joyce Cunningham ("Cunningham Aff."), sworn to October 15, 1993, at ¶¶ 6–7.

Cunningham reported this response to Burbech, who decided to return to the gate. *Id.* At the gate, members of the crew requested that the five offending passengers disembark. The group refused, and asserted that they would deplane only if escorted off by the police. *Id.* The police were then summoned to escort the passengers off the plane. *Id.* At this point, the three men deplaned quietly and were not arrested. Rombom and Adelman, however, had a sharp exchange with the police officers, who arrested the women for disorderly conduct. *Id.*

Plaintiff describes quite a different scenario. She rejects United's characterization of her conduct as disruptive and a safety problem. To the contrary, Rombom alleges that it was Cunningham who acted inappropriately and unprofessional, in a rude and aggressive manner toward her and Adelman.

Rombom acknowledges that she and her friends were talking when the flight attendant began giving the flight safety instructions. Nevertheless, Rombom claims that she and her friends became quiet when the flight attendant stopped the safety demonstration and asked the group to settle down. Affidavit of Jacques Augustin ("Augustin Aff."), sworn to December 29, 1993, at ¶ 6. After the flight safety instructions, the group resumed its conversation. *Id.* at ¶¶ 6–7. Cunningham then approached the group and repeatedly threatened to turn the plane around if they did not behave. One of the men replied that the group was doing nothing wrong, and challenged Cunningham to take whatever course of action she felt was appropriate. Rombom Aff. at ¶ 3. When Rombom asked what the problem was, Cun-

ningham told her to mind her own business unless she wanted to be thrown off the plane. Augustin Aff. at ¶ 9.

Subsequently, the pilot announced that he was turning back to the gate. Members of the flight crew threatened to remove anybody who spoke out loud. *Id.* at ¶¶ 10–11. At the gate, plainclothes security officers approached the group, and instructed them to collect their belongings and deplane. *Id.* at ¶ 11. As Rombom voluntarily exited the plane onto the gateway, a member of the crew said "[p]ut these two girls under arrest." Rombom Aff. at ¶ 5. Rombom denies that she was rude to the police. *Id.* The police handcuffed Rombom, and charged her with disorderly conduct. *Id.* at ¶ 8. As Rombom was placed in a police car, she saw "every passenger" staring at her. *Id.* at ¶ 8.

Rombom and Adelman were taken to a holding cell at the airport. They were later transported to another jail in downtown Chicago, where they were placed with "hard core criminals." *Id.* at ¶¶ 9–12. Rombom was scared that she would be raped because the words "Lesbian love" were written all over the walls of her cell. *Id.* at ¶ 12. Rombom and Adelman were released on bail later that evening. The charge against Rombom and Adelman was subsequently withdrawn[1]. *Id.* at ¶ 15.

Rombom sued United, the pilot and the head flight attendant in the Supreme Court of the State of New York, New York County, claiming that as a result of the defendants' actions she suffered "great mental and physical distress, of a temporary and permanent nature, was humiliated, made sick and injured her character and reputation and otherwise suffered grievous harm." Complaint at ¶ 26. Rombom demanded five million dollars in compensatory damages, and punitive and exemplary damages in the amount of three million dollars.

United removed the case to this Court pursuant to 28 U.S.C. §§ 1332 and 1441, and now moves for summary judgment as a matter of law, alleging that Rombom's state tort claims are explicitly preempted by § 1305(a)

of the Federal Aviation Act of 1958, Pub.L. No. 85–726, 72 Stat. 731, *amended by* the Airline Deregulation Act, Pub.L. No. 95–504, 92 Stat. 1705 (1978), and the Civil Aeronautics Board Sunset Act of 1984, Pub.L. No. 98–443, 98 Stat. 1703, codified at 49 U.S.C.App. §§ 1301–1557. Alternatively, United maintains that §§ 1374 and 1511 of the Airline Deregulation Act and 14 C.F.R. §§ 121.533 and 121.571 of the Federal Aviation Regulations implicitly preempt Rombom's claims because the actions taken by the flight crew were mandated by these statutes and regulations. Rombom opposes the summary judgment motion, arguing that the conduct of which she complains does not fall within the purview of the Federal Aviation Act or the Airline Deregulation Act, and thus is not subject to preemption. Rombom also maintains that there are material issues of fact which defeat the summary judgment motion.

### Discussion

#### I. *Rule 56: Summary Judgment*

Rule 56(c), F.R.Civ.P., provides that summary judgment is appropriate if:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The burden is on the moving party to show that no genuine issue of material fact exists. *Gallo v. Prudential Residential Servs. Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994) (citation omitted). In determining whether a genuine issue of material facts exists, all ambiguities must be resolved and all inferences drawn in favor of the non-moving party. *McNeil v. Aguilos*, 831 F.Supp. 1079, 1082 (S.D.N.Y.1993) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (other citations omitted)).

The moving party may obtain summary judgment by showing that little or no

---

1. It is unclear who pressed charges against Rombom and Adelman. The misdemeanor complaint was apparently signed by Cunningham. Cun-

ningham, however, denies that the signature on the complaint is hers. *See Plaintiff's Opposition Memorandum* at 5.

evidence may be found in support of the nonmoving party's case. *Gallo* at 1223–24 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *DiCola v. SwissRe Holding (N.A.), Inc.,* 996 F.2d 30, 32 (2d Cir.1993)). Establishing the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Rexnord Holdings, Inc. v. Biderman,* 21 F.3d 522, 525 (2d Cir.1994) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original)). Rather, to defeat a summary judgment motion, the responding party must show the existence of a disputed material fact in light of the substantive law. *Anderson* at 248, 106 S.Ct. at 2510. Preemption is a question of law that may be resolved "on the basis of the summary judgment evidence available." *Trans World Airlines, Inc. v. Morales,* 949 F.2d 141, 145 (5th Cir.1991) (per curiam), *aff'd in part, rev'd in part,* —— U.S. ——, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992).

## II. *Preemption Generally*

■■ The Supremacy Clause of the Constitution provides:

> [t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

Article VI, cl. 2. Any state law that conflicts with federal law is "without effect." *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981) (citing *McCulloch v. Maryland,* 4 Wheat 316, 427, 4 L.Ed. 579 (1819) (other citations omitted)). To avoid "unintended encroachment on the authority of the States, however, a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption." *CSX Transportation, Inc. v. Easterwood,* —— U.S. ——, ——, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387 (1993). The assumption that the historic police powers of the States are not to be preempted by a federal statute is overcome on a showing that such a result is the "clear and manifest purpose of Congress." *Cipollone v. Liggett Group, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). The "ultimate touchstone" of preemption analysis is the purpose of Congress. *Id.* (quotation omitted).

■■ Preemption may be express, or implied from the structure and purpose of a statute. *Gade v. National Solid Wastes Management Ass'n,* —— U.S. ——, ——, 112 S.Ct. 2374, 2383, 120 L.Ed.2d 73 (1992) (quotation omitted). In the absence of express preemption, implied preemption may be found in two ways. The first type of implied preemption is field preemption, which occurs in cases where the scheme of federal regulation "is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it ..." *Id.* (quotation omitted). The second form of implied preemption is conflict preemption. Conflict preemption arises where (1) "compliance with both federal and state regulations is a physical impossibility" or (2) the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (quotations omitted). *See also Michigan Canners & Freezers Ass'n, Inc. v. Agricultural Marketing & Bargaining Bd.,* 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984) (summarizing types of preemption).

## III. *Express Preemption Under § 1305*

From 1958–1978, the Federal Aviation Act permitted passengers to pursue common law or state statutory remedies against airlines. *Fenn v. American Airlines, Inc.,* 839 F.Supp. 1218, 1219 n. 1 (S.D.Miss.1993). In 1978, however, the Federal Aviation Act was amended by the Airline Deregulation Act. Section 1305, a part of the Airline Deregulation Act, provides, in relevant part:

(a) Preemption

(1) ... no State or political subdivision thereof and no interstate agency or oth-

er political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority ... to provide air transportation.

The purpose behind § 1305 was "[t]o ensure that the States would not undo federal deregulation with regulation of their own ... by prohibiting the States from enforcing any law 'relating to rates, routes, or services' of any air carrier." *Morales v. Trans World Airlines, Inc.,* — U.S. —, —, 112 S.Ct. 2031, 2034, 119 L.Ed.2d 157 (1992).

Section 1305, however, did not repeal § 1506 of the Federal Aviation Act. Section 1506, part of the Federal Aviation Act since its passage in 1958, is a "savings clause," and provides that "[n]othing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 49 U.S.C. § 1506. The extent to which § 1305 limits § 1506 is unclear.

Courts faced with preemption challenges to state laws affecting air carriers must balance the tension between § 1305 and § 1506. In the case at bar, both parties agree that resolution of this balance hinges on the definition of "services" in § 1305. United argues that Rombom's state tort claims center around the flight crew's decision to transport a passenger, and thus directly implicate the services of the air carrier under § 1305. Rombom contends that defendant's outrageous conduct cannot be considered a "service" at all, and that defendant's interpretation of § 1305 would bar passengers from ever maintaining a state tort action against an airline when its conduct in providing a service results in personal injury.

United cites the Supreme Court's decision in *Morales* in support of its preemption argument. At issue in *Morales* was the enforcement of state laws designed to prohibit deceptive advertising by airlines. The Supreme Court interpreted the "relating to" language in § 1305 as preempting "[s]tate enforcement actions having a connection with or reference to airline 'rates, routes, or ser-

vices' ..." *Id.* at —, 112 S.Ct. at 2037. Because the state laws in question could impact on airline rates, the Supreme Court upheld an injunction barring state attorneys general from enforcing airline advertising regulations. *Id.* at —, 112 S.Ct. at 2037–39.

Prior to the Supreme Court's decision in *Morales,* courts faced with § 1305 cases divided them:

> between economic or regulatory issues and personal injury, damage or negligence issues ... [M]ost courts which considered the issue held that preemption under section 1305(a) was a broad prohibition against incursions into the field of air carrier regulation.

*Fenn* at 1220 (quotation omitted). In the wake of *Morales,* however, it is no longer clear whether such distinctions are valid. On the one hand, the *Morales* Court observed:

> [t]his case therefore appears to us much like *Pilot Life [Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41 [107 S.Ct. 1549, 95 L.Ed.2d 39] (1987)], in which we held that a common-law tort and contract action seeking damages for the failure of an employee benefit plan to pay benefits 'relate[d] to' employee benefit plans and was pre-empted by ERISA.

*Id.* at —, 112 S.Ct. at 2039. This passage lends some support to United's position that § 1305 should be construed broadly. *See Lawal v. British Airways, PLC,* 812 F.Supp. 713, 719 (S.D.Tex.1992) (*Morales*'s reference to ERISA cases counsels in favor of broad preemption). On the other hand, the *Morales* Court also cautioned against applying § 1305 preemption in cases where the state law's impact on an air carrier's rates, routes, or services was "tenuous, remote, or peripheral[.]" *Id.* at —, 112 S.Ct. at 2040 (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983)).

United urges me to adopt the reasoning set forth in *O'Carroll v. American Airlines, Inc.,* 863 F.2d 11 (5th Cir.), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989). In *O'Carroll,* plaintiff was intoxicated and boisterous. When asked to deplane,

plaintiff began to utter obscenities. The pilot summoned the police, who arrested plaintiff. Plaintiff brought an action asserting state law claims based on wrongful exclusion. The Court did not discuss whether plaintiff's claims related to rates, routes or services. Instead, the Court held that on its face, § 1305 was an "explicit manifestation of congressional intent, [and] we conclude that O'Carroll's common law claims are preempted. . . ." *Id.* at 13.

The Fifth Circuit reiterated this expansive view of § 1305 and the meaning of "services" in an unpublished decision [2], *Baugh v. Trans World Airlines,* 915 F.2d 693 (5th Cir.1990). In *Baugh,* a stewardess stepped on a passenger's foot during a flight. The Court held that as the negligent conduct was caused by a flight attendant in the course of her employment, the action was preempted because it arose out the services afforded by the airline to passengers. *Id. See also Cannava v. USAir, Inc.,* 1993 WL 565341 (D.Mass January 7, 1993) (state tort claims based on ticket agent's grabbing plaintiff's ticket, treating him rudely, and preventing him from boarding preempted because agent's actions were services); *Lawal* at 719–20 (state tort claims brought by passenger detained by airline security preempted by § 1305 because such claims relate to treatment of passengers).

Numerous courts have attacked *O'Carroll* and *Baugh* as overbroad. Most significant among these cases is *Hodges v. Delta Airlines, Inc.,* 4 F.3d 350 (5th Cir.1993), *reh'g en banc granted,* 12 F.3d 426 (1994). Plaintiff in *Hodges* brought state tort claims against Delta Airlines based on injuries sustained when a case of rum fell out of an overhead compartment. Respecting the doctrine of *stare decisis,* the panel followed the reasoning set forth in *Baugh.* The Court, however, observed that "[i]f the panel were to decide the issue in the first instance, we would decide that there was no ADA [Airline Deregulation Act] preemption of this boldly injury tort case." *Id.* at 352.

The *Hodges* Court advocated the adoption of a narrow definition of "services" for

§ 1305 purposes, in which "services" would be defined as:

> a bargained-for or anticipated provision of labor from one party to another . . . Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself. These matters are all appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline. It is these features of air transportation that we believe Congress intended to de-regulate as "services" and broadly to protect from state regulation.

*Id.* at 354. In arguing that Congress did not intend to preempt most state tort claims, the Court found the continued existence of § 1506 particularly persuasive. *Id.* at 355.

Adopting definitions of "services" similar to the one employed in *Hodges,* some courts have held that state law personal injury actions are never preempted under § 1305. *Stagl v. Delta Air Lines, Inc.,* 849 F.Supp. 179, 182 (E.D.N.Y.1994) (section 1305 "necessarily exclude[s] an air carrier's common law duty to exercise ordinary care from preemption.") (quoting *Butcher v. City of Houston,* 813 F.Supp. 515, 517–18 (S.D.Tex.1993)). *See also Dudley v. Business Express, Inc.,* 1994 WL 558680 at *5 (D.N.H. October 11, 1994) (personal injury actions fall outside the sweep of § 1305) (citing *O'Hern v. Delta Airlines,* 838 F.Supp. 1264, 1267 (N.D.Ill. 1993)); *Jamerson v. Atlantic Southeast Airlines, Inc.,* 860 F.Supp. 821, 826 (M.D.Ala. 1994) (same); *Union Iberoamericana v. American Airlines, Inc.,* 1994 WL 395329 at *3 (S.D.Fl. July 20, 1994) ("run-of-the-mill negligence and breach of contract claims" are not specifically aimed at regulating rates, routes, or services, and therefore not preempted); *Margolis v. United Airlines, Inc.,* 811 F.Supp. 318, 324 (E.D.Mich.1993) (section 1305 preemption not intended to be an insurance policy for air carriers against their own negligence).

---

2. In contrast to the practice of the Second Circuit, the Fifth Circuit does not prohibit citation of unpublished opinions. *See Hodges* at 355 (citing Fifth Circuit Local Rule 47.5.3).

■ Given that Congress did not repeal § 1506, I do not accept United's argument that § 1305 preempts all state tort actions. Adopting the result urged by United would leave injured plaintiffs without a remedy in situations where outrageous and unnecessary conduct occurred during the performance of a service. *See, e.g., Kiefer v. Continental Airlines, Inc.,* 882 S.W.2d 496 (Tex.Ct.App. 1994) (rejecting *O'Carroll* and *Baugh* because passenger injured by object that fell out of overhead bin would have no legal remedy).

Contrary to United's contention, injured plaintiffs do not have an alternative administrative remedy to state tort claims. *See United Airlines, Inc.'s Reply to Plaintiff's Opposition to United's Motion for Summary Judgment* at 6–7. Although private parties may file administrative complaints alleging violations of the Federal Aviation Act with the Federal Aviation Administration or the Department of Transportation, no money damages are available to private parties. The only remedies under the Federal Aviation Act are civil penalties not to exceed $1,000, criminal sanctions, and injunctive relief. *Margolis* at 324 (citing 49 U.S.C.App. §§ 1471–1474, 1487 (1976 and Supp.1992)). Given the Supreme Court's admonition in *Morales* that state laws that are "tenuous, remote, or peripheral" should not be preempted, it is difficult to justify an interpretation of § 1305 as broad as the one advocated by United. The logic of this result is further reinforced by Congress's decision to retain § 1506 after the passage of the Airline Deregulation Act.

■ However, I also reject Rombom's contention that § 1305 never preempts state tort claims. The Supreme Court's broad interpretation of the "relating to" language in § 1305 counsels against adopting a definition of "services" that is so narrow as to preempt only state laws that are directly regulatory in nature. *See CSX Transportation* at ——, 113 S.Ct. at 1738 (citing *Morales* for the proposition that a statute's use of "relating to" confers broad preemptive effect). *Compare Williams v. Express Airlines I, Inc.,* 825 F.Supp. 831, 833 (W.D.Tenn.1993) (*Margolis* holding that personal injury claims never preempted too broad in light of the sweep of relating to language in *Morales*) with *Sedigh v. Delta Airlines, Inc.,* 850 F.Supp. 197, 200 (E.D.N.Y.1994) ("[t]he proper focus should be on whether or not the specific common law action addresses matters about which the airlines wish or are likely to compete.") and *Kay v. USAIR, Inc.,* 1994 WL 406548 at *2 (E.D.Pa. July 28, 1994) (Congress intended only to preempt states from enacting regulations prescribing aspects of service such as the number and duties of flight attendants) and *Union Iberoamericana* at *4 (ordinary state negligence laws not preempted because they are not "specifically aimed" at regulating rates, routes, or services, but rather are designed to provide aggrieved parties with an avenue of redress). A state tort claim is "as subject to § 1305 pre-emption as any other claim, if it can be demonstrated that it 'relates to' airline 'rates, routes, or services.'" *Williams* at 833.

■ In the absence of controlling Second Circuit precedent, I take an intermediate approach to § 1305 preemption questions. Whether or not a claim is preempted under § 1305 requires a careful, case-by-case analysis. It is not possible to fashion a bright line rule that clearly delineates permissible and impermissible claims under § 1305. Confining the preemption inquiry to the question of whether the tasks implicated in the complaint (e.g., providing boarding instructions, food service, etc.) are services under § 1305 is inadequate. The manner in which an inflight activity is conducted also bears on the question of preemption. *See Fenn* at 1223 (determination of which state tort actions preempted hinges on specific facts alleged by plaintiff).

Although the case law in this area differs with regard to substantive outcomes, close scrutiny reveals three factors that play an important role in a court's determination of § 1305 preemption.

The threshold inquiry under § 1305 is to define whether the activity at issue in the claim is an airline service. *Compare Williams* at 833 (state claims arising out of airline's refusal to allow passenger to board directly implicate services because the claims immediately arise from denial or inadequate-

ly provision of such services) with *Chouest v. American Airlines, Inc.,* 839 F.Supp. 412, 415–16 (E.D.La.1993) (section 1305 preemption not applicable to state tort action arising out of injuries sustained on tour bus provided by airline as part of vacation package because provision of ground transportation by airline is not a service). If the court determines that an activity is not an airline service for § 1305 purposes, the preemption inquiry ceases, and the state law claims are actionable.

However, if the activity in question implicates a service, the court must then determine whether the claim affects the airline service directly or tenuously, remotely, or peripherally. *See Morales* at ——, 112 S.Ct. at 2040 (quotation omitted); *Hodges* at 354–55 (suggesting that enforcement of tort duties such as reasonable care will not have "the forbidden significant effect" on airline services) (quotation omitted). Where a specific state tort claim has only an incidental effect on a service, there is no preemption and the state tort action should continue. *Bayne v. Adventure Tours USA, Inc.,* 841 F.Supp. 206, 207–08 (N.D.Tex.1994) (citing *Fenn* at 1223). *Compare Williams* at 833 (claims stemming from airline's refusal to allow passenger to board directly implicate airline services because they "immediately arise from the denial, or allegedly inadequate provision of, such services.") with *Butcher* at 517–18 ("services" under § 1305 are limited to those services "distinctively incident to the provision of airline service," and therefore negligence action based on airline's maintenance of floor outside gate falls outside ambit of services for § 1305 purposes). Where the activity in question directly implicates a service, a court should proceed to the next step of the preemption analysis.

The third prong of the preemption inquiry is whether the underlying tortious conduct was reasonably necessary to the provision of the service. *Curley v. American Airlines, Inc.,* 846 F.Supp. 280, 284 (S.D.N.Y.1994) (pilot's "passing on to ground personnel accurate or inaccurate information concerning a passenger's smoking habits ... [does not] refer to services normally expected of flight personnel."). On the one hand, § 1305 can-not be construed in a manner that insulates air carriers from tort liability for injuries caused by outrageous conduct that goes beyond the scope of normal aircraft operations. *Doricent v. American Airlines, Inc.,* 1993 WL 437670 at *5 (D.Mass. October 19, 1993) (claims of racial discrimination, assault, battery and intentional infliction of emotional distress not preempted because these claims "have nothing whatsoever to do with any legitimate or quasi-legitimate industry-wide practice of affording airline service."). On the other hand, where the service was provided in a manner that falls within a spectrum of reasonable conduct, then § 1305 tips the balance in favor of preemption. *Cf. Morales* at ——, 112 S.Ct. at 2039 (interpreting "relating to" language of § 1305 broadly). The determination of reasonableness for § 1305 purposes is a question of law either where no dispute exists as to the extent of the conduct, or where a court accepts plaintiff's version of the conduct. *See Morales* at 949 F.2d 145. *Cf. Gallo* at 1223–24; *Rexnord* at 525. If the tortious act did not occur during the service in question or the tortious act did not further the provision of a service in a reasonable manner, then the state tort claim should continue.

To illustrate the mechanics of this part of the analysis, counsel at oral argument were told to assume that providing flight safety instructions is a service for § 1305 purposes, and that a passenger boisterously interferes with the provision of that service. If a flight attendant asks the offending passenger to be quiet in order to finish the instructions, the passenger refuses, and the attendant shoots the passenger to obtain quiet, would the passenger's state tort claim be preempted under § 1305? Counsel for United had great difficulty answering this hypothetical, and conceded the need to proffer an analysis of § 1305 that would distinguish shooting a passenger and asking for quiet in a rude or unprofessional manner. Transcript of Oral Argument, dated July 8, 1994, at 32. Indeed, it would be illogical to assume that Congress intended to preempt a subsequent tort suit where a flight crew member performs a service in an unreasonable and unnecessary manner.

Rombom's tort claims center around three chronologically distinct actions taken by the flight crew. First, Rombom complains that the flight crew, especially Cunningham, acted in a "rude" and "unprofessional" manner when they told her to be quiet. The second activity for which Rombom seeks to recover is the pilot's decision to return to the gate. Finally, Rombom argues that tortious acts were committed by the flight crew when they had her arrested out of spite. Analyzing each of these actions in turn, I find only Rombom's last claims to be actionable.

### 1. Claims Based on Rude and Unprofessional Service Prior to the Captain's Decision to Return to the Gate

 All of Rombom's claims arising out of the rude and unprofessional way she was told to be quiet concern services within the meaning of that term under § 1305, and therefore satisfy the first prong of the preemption analysis. Even under the narrowest definition of services, a flight attendant who asks for quiet so that others may hear safety instructions is clearly performing a service. Indeed, plaintiff does not dispute that the purpose of the reprimands was to promote flight safety.

This set of claims also satisfies the second prong of the analysis. Because Rombom's allegations openly attack the manner in which the flight crew provided a service, her claims directly implicate a service. *See Williams* at 833 (claims stemming from airline's refusal to allow passenger to board directly implicate airline services because they "immediately arise from the denial, or allegedly inadequate provision of, such services.").

Rombom's claims based on the rudeness of the flight crew do not, however, survive the scrutiny of the third prong. As noted, plaintiff does not dispute that the flight attendants were performing a service when they asked Rombom to be quiet so that all the passengers could hear the safety instructions. All that plaintiff alleges is that the crew delivered these reprimands in a rude manner. *See* Augustin Aff. at ¶ 10 ("[t]he stewardess treated all of us like school children."). While the manner in which the flight crew may have reprimanded Rombom may not have been ideal, even when viewed in the light most favorable to Rombom, the actions of the flight crew cannot be categorized as outrageous or unreasonable. Thus, I find that § 1305 preempts claims for any emotional or other type of injury suffered as a result of the reprimands Rombom received before the plane returned to the gate.

### 2. Claims Based on the Pilot's Decision to Return to the Gate

 A pilot's decision whether to take off or to return to the gate is unquestionably a service, because such a decision determines whether the passengers will get to their destination. *See Fenn* at 1223 (suggesting that safety is a service under § 1305). Therefore, the first prong of the preemption analysis is satisfied. For reasons similar to those set forth in the above analysis of the claims arising out of United's "rude" and "unprofessional" service, I find the second prong of the analysis satisfied. The harm suffered by Rombom, and consequently the foundation of her various tort claims, was a direct result of the pilot's decision to return to the gate.

Rombom's claims arising out of Captain Burbech's decision to return to the gate, however, do not pass the third prong of the analysis. Rombom's papers do not allege that Captain Burbech's decision to return to the gate was motivated by any improper or malevolent scheme. Rombom simply alleges that Burbech relied upon the information he received from the flight crew. Adelman Aff. at ¶ 7.

Rombom demands recovery for injuries inflicted by the very fact that the plane returned to the gate. Under federal law, the pilot has discretion to refuse to transport a passenger who poses a threat to the safety of the flight. 49 U.S.C.App. § 1511; 14 C.F.R. §§ 121.533 and 121.571. Whether the pilot properly exercised his discretion to deny Rombom passage by returning to the gate:

rests upon the facts and circumstances of the case as known to the airline *at the time* it formed its opinion and made its decision [to deny transport to a passenger] and whether or not the opinion and decision were rational and reasonable and not ca-

pricious or arbitrary in the light of the facts and circumstances. They are not to be tested by other facts later disclosed by hindsight.

*Sedigh* at 201 (quoting *Williams v. Trans World Airlines,* 509 F.2d 942, 948 (2d Cir. 1975)) (emphasis added). *See also Zervigon v. Piedmont Aviation, Inc.,* 558 F.Supp. 1305, 1306 (S.D.N.Y.), *aff'd,* 742 F.2d 1433 (2d Cir.1983) (pilot vested with "wide discretion" to decide whether to transport passenger in order to protect passengers).

Captain Burbech's decision to return to the gate was a federally authorized service. Nothing in the record even remotely suggests that Captain Burbech's decision fell outside the spectrum of reasonable conduct. At best, Rombom alleges that the Captain overreacted to the threat Rombom and her companions posed. I find, therefore, that any claims based on the Captain Burbech's decision to return to the gate fail the third prong of the analysis, and are preempted under § 1305.

3. Claims Stemming from Rombom's Arrest

■ As noted, Rombom alleges that well after she ceased to pose a safety threat, the flight crew decided to have her arrested. Rombom argues that this decision was motivated by spite. Under the first prong of the preemption inquiry, I find that the decision to have a passenger arrested may be a service if it is the only way to remove a passenger who refuses to disembark. *See Fenn* at 1223 (discussing provision of services related to safety). United's papers suggest that this is the reason why the police were summoned.

Rombom's claims arising from the arrest survive the second step of the preemption inquiry, however, because she claims she departed the plane without arrest and the decision to have her arrested was motivated by spite. In cases such as the one at bar where the essence of the claim is that the air carrier abused its authority to provide a given service, the air carrier is not entitled to the protection of § 1305. Because the flight crew's decision to have Rombom arrested was allegedly motivated by spite or some unlawful purpose, Rombom's subsequent tort

claims arising out of this decision are at best tenuously related to an airline service.

Even if Rombom's claims directly implicated a service, United's preemption argument would still fail under the third prong of the inquiry because the issue of whether the airline ordered the arrest remains in dispute. Assuming that the flight crew's decision was entirely motivated by a desire to protect the safety of the flight, under Rombom's version of the facts, having her arrested was not necessary to promote safety because she ceased to pose any danger after the first flight attendant asked for quiet and she departed the plane quietly.

■ I now turn to the question of whether Rombom's remaining claims survive United's motion for summary judgment. Liability for any claims arising out the arrest necessarily hinges on the factual determination of who was responsible for the arrest.

Rombom argues that she voluntarily left the plane, and that she heard a member of the flight crew tell the police to place her and Adelman under arrest. Rombom Aff. at ¶ 5. In support of this contention, Rombom points out that Cunningham signed a misdemeanor complaint in order to have charges drawn up. Affirmation of David Field dated January 12, 1994 at Ex. I. Rombom also denies being rude to the police. *Id.* at ¶ 8.

United alleges that it was not responsible for having Rombom arrested. According to United, the police were called because Rombom refused to deplane voluntarily. Cunningham Aff. at ¶¶ 6–7. United further alleges that the flight crew did not ask the police to arrest Rombom. Rather, the police decided to arrest Rombom after she engaged them in a heated exchange. *Id.* Finally, Cunningham denies that her signature appears on the misdemeanor complaint form. *Plaintiff's Opposition Memorandum* at 5.

Because significant issues concerning the circumstances leading up to Rombom's arrest remain in dispute, United's motion for summary judgment must be denied.

IV. *Implied Preemption by Conflict with Federal Regulations*

■ In the alternative, United advocates preemption of Rombom's claims because they

conflict with a series of federal statutes and regulations. *See* Federal Aviation Regulations, 14 C.F.R. §§ 121.533 and 121.571, and §§ 1374(a)(1) and 1511(a) of the Federal Aviation Act. The gravamen of these statutes and regulations is that an air carrier has a duty to ensure the safety of passengers. An air carrier is authorized to refuse transportation to a passenger "when, in the opinion of the carrier, such transportation would or might be inimical to safety of flight." 49 U.S.C.App. § 1511(a). Federal regulations place this authority in the pilot's discretion. *See* 14 C.F.R. §§ 121.533 and 121.571. Anyone who threatens a crew member or flight attendant, or interferes with or lessens that person's ability to perform their duties, may be imprisoned for up to twenty years, liable for up to a $10,000 fine, or both. 49 U.S.C.App. § 1472(j).

United concedes that none of these regulations expressly preempt Rombom's claims. *Memorandum of Points and Authorities in Support of United Airlines, Inc.'s Motion for Summary Judgment* at 11. Instead, United argues that because federal law requires air carriers to eject passengers who pose a security threat, any state law claim challenging such an action must be preempted by conflict.

The Supreme Court has cautioned that there is "no need" to infer congressional intent to preempt state laws when Congress included an express preemption clause in the very legislation that a litigant's implied preemption argument relies upon. *Cipollone* at ——, 112 S.Ct. at 2618 (plurality opinion) (quotation omitted). The reluctance to imply preemption in such cases is based on the view that "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not preempted." *Id. See also id.* at ——, 112 S.Ct. at 2625 (Blackmun, J. concurring in part) ("[w]here ... Congress has included in legislation a specific provision addressing—and indeed, entitled—pre-emption, the Court's task is one of statutory interpretation—only to identify the domain expressly pre-empted by the provision.") (quotation omitted).

I find *Cipollone* controlling in the case at bar. The statutes and regulations cited by United are either part of, or intimately intertwined, with the Federal Aviation Act. Also part of the Federal Aviation Act is § 1305, which as noted is entitled "[p]reemption." I decline to find any preemption in the Federal Aviation Act beyond that which is set forth in § 1305.

I note, however, that even if I were to accept United's implied preemption argument, the end result would be virtually identical to the one reached in the § 1305 analysis. Any claims directed at the flight crew's requests for quiet, or the pilot's decision to turn the plane around, would be preempted because these responses were authorized by the statutes and regulations cited by United and are encompassed directly by the "services" preemption in § 1305. However, nothing in the statutes and regulations cited by United authorizes an air carrier to take any action, such as having a passenger arrested out of spite or maliciousness, where the arrest was not necessary to the provision of a service.

### Conclusion

For the reasons stated above, United motion for summary judgment is partially granted with respect to any claims based on (1) the arguments plaintiff had with the flight attendants concerning her behavior, and (2) the pilot's decision to return to the gate. Summary judgment is denied with respect to any claims relating to United's role in having plaintiff arrested. The Clerk of the Court is directed to enter judgment accordingly.

**SO ORDERED.**