[Cite as *Keller v. Dundon*, 2013-Ohio-2727.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| EVELYN KELLER | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellant | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| MAUREEN DUNDON, ET AL | : | Case No. 12-CA-73 |
| | : | |
| Defendant - Appellees | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Licking County
                                  Court of Common Pleas, Case No.
                                  11-CV-0891TMM



JUDGMENT:                         REVERSED & REMANDED



DATE OF JUDGMENT:                 June 20, 2013



APPEARANCES:

For Plaintiff-Appellant                 For Defendants-Appellees

JOHN K. KELLER                          MICHAEL E. BUCKLEY
52 East Gay Street                      6037 Frantz Road, Suite 107
P. O. Box 1008                          Dublin, OH 43017
Columbus, OH 43216-1008
                                        STEVEN L. BOLDT
                                        20 South Clark Street Suite 2500
                                        Chicago, IL 60603

*Delaney, J.*

{¶1}   Plaintiff-Appellant Evelyn Keller appeals the October 3, 2011 and August 28, 2012 judgment entries of the Licking County Court of Common Pleas dismissing her complaint.

## FACTS AND PROCEDURAL HISTORY

{¶2}   On July 5, 2011, Keller filed a complaint against Defendants-Appellees Maureen Dundon, Chautauqua Airlines, Inc, and Republic Airlines, Inc. in the Licking County Court of Common Pleas.   In her complaint, Keller brought the following claims: (1) negligence against Dundon; (2) respondeat superior liability against Chautauqua Airlines and Republic Airlines; (3) negligent training, supervision, and review against Chautauqua Airlines and Republic Airlines; (4) breach of contract against Chautauqua Airlines and Republic Airlines; (5) violation of the Air Carrier Access Act against Dundon, Chautauqua Airlines, and Republic Airlines; and (6) punitive damages against Dundon, Chautauqua Airlines, and Republic Airlines.   The complaint alleges the following facts.

{¶3}   On November 13, 2010, Keller flew on Continental Express Flight 5909 from Houston, Texas to Columbus, Ohio.  Keller suffers from a physical disability that requires her right leg to be able to be both flexed and extended when she is in a continual seated position.  To accommodate her physical disability on the flight from Texas to Ohio, Keller booked and received, in advance, confirmation of a seat assignment for an aisle seat on the right side of the aircraft, specifically seat 4B.

{¶4}   Keller was provided a boarding pass that assigned her seat 4B as her confirmed seat.  When Keller boarded Flight 5909, another passenger was seated in

seat 4B.  The passenger informed Keller that the flight attendant, Defendant-Appellee Maureen Dundon, gave the passenger seat 4B so that the passenger could sit next to her relative.

{¶5}   Keller informed Dundon that she had a physical disability that required her to sit in seat 4B.  Keller stated she needed to sit in an aisle seat on the right side of the aircraft so she could flex and straighten her right leg.   In response, Dundon stated, "Just my luck, I give away one seat and it belongs to a handicapped."  Dundon directed Keller to a seat in the front row of the plane, immediately behind the bulkhead.  Keller told Dundon she could not sit in the seat behind the bulkhead because Keller could not fully stretch her leg.  Dundon directed Keller to sit in the bulkhead seat.

{¶6}   Keller sat in the bulkhead seat, which prevented Keller from stretching and flexing her right leg during the flight.  The lack of movement caused injury and pain in her right leg and right hip, also causing Keller to suffer emotional distress.  Airport employees physically assisted Keller off the plane upon landing.  Keller sought medical attention directly after the flight.

{¶7}   Prior to filing an answer to the complaint, Dundon, Chautauqua Airlines, and Republic Airlines filed a joint motion to dismiss on August 3, 2011.  Keller filed a response and Appellees filed a reply.  In their motion to dismiss, Appellees argued Keller's claims were preempted by federal law pursuant to the Airline Deregulation Act of 1978.  On October 3, 2011, the trial court issued its judgment entry that granted Appellees' motion to dismiss in part.  The trial court found Keller's claims for negligence were preempted by the Airline Deregulation Act.  The trial court dismissed counts one,

two, three, five, and six of Keller's complaint.  The trial court denied Appellees' motion to dismiss as to Keller's claim for breach of contract.

{¶8}  On February 29, 2012, Chautauqua Airlines and Republic Airlines filed a motion for summary judgment on the breach of contract claim.  Keller filed a response and Appellees filed a reply.  The trial court granted the motion for summary judgment on August 28, 2012, disposing of Keller's sole remaining claim.

{¶9}  It is from these judgments Keller now appeals.

### ASSIGNMENTS OF ERROR

{¶10} Keller raises five Assignments of Error:

{¶11} "I. THE COURT ERRED BY DISMISSING PLAINTIFF-APPELLANT'S TORT CLAIMS AGAINST THE AIRLINES, ON THE BASIS THAT FEDERAL LAW WHICH PREEMPTS STATE CONTROL OVER AIRLINES "OPERATION" APPLIES TO A SITUATION WHERE A FLIGHT ATTENDANT KNOWINGLY RESEATED A DISABLED PASSENGER INTO A SEAT WHICH DID NOT ACCOMMODATE HER DISABILITIES FOR NON-OPERATIONS REASONS.

{¶12} "II. THE COURT ERRED BY DISMISSING PLAINTIFF-APPELLANT'S TORT CLAIMS AGAINST THE FLIGHT ATTENDANT WITHOUT CONSIDERATION OF WHETHER THE FLIGHT ATTENDANT'S ACTIONS IN KNOWINGLY SEATING A DISABLED PASSENGER INTO A SEAT WHICH DID NOT ACCOMMODATE HER DISABILITIES WERE, OR WERE NOT, IN COMPLIANCE WITH THE FLIGHT ATTENDANT'S EMPLOYER'S WORK RULES AND POLICIES AND THUS WHETHER THE FLIGHT ATTENDANT WAS ACTING WITHIN THE SCOPE OF HER EMPLOYMENT.

{¶13} "III. THE COURT ERRED BY DETERMINING THAT AS A MATTER OF LAW THE ACTIONS OF DEFENDANTS-APPELLEES COULD NOT BE CONSIDERED OUTRAGEOUS.

{¶14} "IV. THE COURT ERRED BY DETERMINING THAT THE ISSUE OF WHETHER THE ACTIONS OF DEFENDANTS-APPELLEES WERE OUTRAGEOUS WAS NOT AN ISSUE OF FACT FOR DETERMINATION BY A JURY.

{¶15} "V. THE COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS-APPELLEES ON THE CONTRACT ISSUE, NOTWITHSTANDING THAT THE APPLICABLE CONTRACT WAS EXPRESSLY SUBJECT TO FEDERAL LAWS AND RULES, AND THOSE LAWS AND RULES REQUIRE AN AIRLINE TO REASONABLY ACCOMMODATE THE SEATING NEEDS OF A PASSENGER WITH DISABILITIES."

## ANALYSIS

### *I., II., III., and IV.*

{¶16} We consider Keller's first, second, third, and fourth Assignments of Error together because they raise a similar question as to whether the trial court erred in granting Appellees' motion to dismiss because the Airline Deregulation Act preempted Keller's negligence claims.

{¶17} The standard of review on a Civil Rule 12(B)(6) motion to dismiss is de novo. *Greely v. Miami Valley Maintenance Contrs., Inc.,* 49 Ohio St.3d 228, 551 N.E.2d 981 (1990). In a de novo analysis, we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party. *Byrd v. Faber,* 57 Ohio St.3d 56, 565 N.E.2d 584 (1991).

{¶18} The basis of Keller's claims against Dundon, Chautauqua Airlines, and Republic Airlines arise from Dundon's alleged negligent actions towards Keller. Keller's complaint states as to Dundon's negligence:

39. Dundon negligently required Plaintiff to sit in a seat unfit for her medical needs and physical disability, causing physical injury to Plaintiff's knee and hip.

40. Dundon failed to provide Plaintiff with seat 4B, which Plaintiff scheduled in advance of Flight 3909 [sic], and paid for, to accommodate her physical disability.

41. Dundon was told of Plaintiff's physical disability and, as an employee of a common carrier, owed Plaintiff a heightened degree of care.

42. As a direct and proximate result of Dundon's negligence, Plaintiff sustained significant damages and personal injuries, * * *.

{¶19} In Appellees' joint motion to dismiss, Appellees argued Keller's claims were preempted under the Airline Deregulation Act of 1978 ("ADA"), now known as the Federal Aviation Authority Authorization Act (1994). From 1958 to 1978, the Federal Aviation Act permitted passengers to pursue common law or state statutory remedies against airlines. In 1978, the Federal Aviation Act was amended by the ADA. The relevant version of the ADA provides in relevant part:

(b) Preemption

(1) Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law

related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. 41713(b)(1).

{¶20} Congress, however, left in place the "savings clause" that provides that "[a] remedy under this part is in addition to any other remedies provided by law." 49 U.S.C. 40120(c).

{¶21} We note that tort law traditionally has been regulated by the states, particularly claims for personal injuries.

{¶22} The first issue is whether Keller's negligence claims relate to a "price, route, or service of an air carrier" Appellees argue Keller's claims involve the provision of a service because they are directly related to Appellees' boarding/seating policies and procedures, specifically seating assignments on Flight 5909.

{¶23} There is no definition within the federal statute as to the meaning of "relating to * * * service." "The United States Supreme Court has acknowledged that the statute was meant to bar state actions 'having a connection with or reference to airline * * * services.'" *Peterson v. Continental Airlines, Inc.*, 970 F.Supp. 246 (S.D.N.Y.1997) quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384, 112 S.Ct. 2031, 119 L.E.2d 157 (1992). "However, the Court has cautioned against finding preemption in cases where the state law's impact on an air carrier's services is 'tenuous, remote, or peripheral." *Id.* Although the Supreme Court has interpreted the reach of the ADA's preemption provision in three cases, it has not expressly ruled on whether state tort actions are within the provision's preemptive scope. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (states prohibited from

enforcing airline fare advertising guidelines adopted by the National Association of Attorneys General (NAAG) through their existing general consumer protection laws); *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995) (state consumer fraud claims involving frequent flyer program preempted because they serve to guide and police marketing practices of airlines and thus impose state substantive standards with respect to rates, routes or services. Common law contract claims were not preempted because they merely involve an airline's own agreements); and *Rowe v. New Hampshire Motor Transport Ass'n,* 552 U.S. 364, 128 S.Ct. 989, 169 L.Ed.2d 933 (2008) (state tobacco law regulating the delivery of tobacco within the state preempted by the ADA because it directly regulated airline and trucking services).

{¶24} Keller asks this Court to consider a three-part test utilized by the United States District Court in *Rombom v. United Air Lines, Inc.*, 867 F.Supp. 214, 221, (S.D.N.Y.1994) to determine whether preemption is warranted under the ADA. The threshold inquiry in deciding whether state claims against an airline are preempted by Section 41713 is whether the activity at issue is an airline service. *Id.* If the court determines the activity is not an airline service for Section 41713 purposes, then the preemption inquiry ceases and the state law claims are actionable. *Id.* at 222. If, however, the activity at issue implicates an airline service, then the court must address the second prong: Whether plaintiff's claims affect the airline service directly as opposed to "tenuously, remotely, or peripherally." *Id.* If the state claims have only an incidental effect on the airline service, there is no preemption. The third prong of the preemption inquiry focuses on whether the underlying tortious conduct was reasonably necessary to the provision of the service. *Id.* In other words, Section 41713 "cannot be

construed in a way that insulates air carriers from liability for injuries caused by outrageous conduct that goes beyond the scope of normal aircraft operations." *Id.* at 222. If, in contrast, the service was provided in a reasonable manner, then preemption is appropriate.

{¶25} The three-part *Rombom* test has been adopted by the United States District Court for the Eastern District of Michigan in *Hammond v. Northwest Airlines*, No. 09-12331, 2009 WL 4166361 (Nov. 25, 2009). The Ohio Tenth District Court of Appeals also engaged in a similar analysis in *White v. America West Airlines, Inc.,* 152 Ohio App.3d 14, 2003-Ohio-1182. *See also*, *Restivo v. Continental Airlines, Inc.*, 192 Ohio App.3d 64, 2011-Ohio-219, 947 N.E.2d 1287 (8th Dist.) (claims alleging violation of Ohio's Gift Card Statute and Ohio Consumer Sales Practices Act were preempted by the ADA).

{¶26} In *White v. America West Airlines, Inc.*, the plaintiffs brought a cause of action for defamation against the pilot and crew of a flight from which the plaintiffs were removed. After the plaintiffs' removal from the flight, the captain addressed the passengers and apologized for the disturbance. Plaintiffs argued the announcement was defamatory, entitling them to damages. *White*, 2003-Ohio-1182, ¶ 10. The Tenth District Court of Appeals analyzed the issue of service and the tort claim and concluded, "[d]espite our best efforts to do so, we have been unable to conceive of any situation where a defamatory statement is a 'service' of an airline." *Id.* at ¶ 18.

{¶27} We will engage in the *Rombom* analysis to determine whether Keller's claim is preempted by Section 41713. The activity at issue, the flight attendant managing the seating assignments during the boarding of the flight, would constitute an

airline service based on the underlying facts of this case. "A flight crew's conduct during the boarding stage of a flight, specifically, flight attendants' efforts to locate appropriate seat assignments and resolve seat conflicts, constitutes an airline service within the meaning of Section 41713." *Peterson v. Continental Airlines, Inc.*, 970 F. Supp. 246, 250 (S.D.N.Y. 1997).

{¶28} The next prong asks whether Keller's personal injury claims affect the airline service directly, as opposed to "tenuously, remotely, or peripherally." *See Rowe, supra,* at 375. Keller claims that Dundon sat a passenger traveling with a relative in Keller's confirmed seat. Keller states that by not honoring her confirmed aisle seat and placing her in a bulkhead seat, she suffered a physical injury and emotional distress. We conclude under the second *Rombom* prong, Keller's claims against the airline have a tenuous, remote, or peripheral impact on the delivery of services by the airlines; therefore, preemption is not warranted. We find such a negligence suit would not impede free market competition of air carriers or frustrate deregulation by interfering with matters about which airlines compete. Here, a disabled passenger was allegedly injured by the negligent acts of Dundon. Allowing Keller's claims to proceed would not, in this Court's opinion, have a direct or indirect effect on airline competition or frustrate Congress's purpose in deregulation. To preempt such personal injury claims would also have the effect of immunizing Appellees from the consequences of their own negligence.

{¶29} The third prong analyzes whether Appellees provided the airline service in a reasonable manner; i.e., whether the underlying tortious conduct was reasonably necessary to the provision of the service. Even assuming that Keller's claims directly

implicate an airline service, Appellees' preemption argument also fails under the third prong because Keller's version of the facts raises the issue of whether Appellees acted reasonably and/or went beyond the scope of normal aircraft boarding procedures.

{¶30} Based on our de novo review, the trial court erred in granting Appellees' joint motion to dismiss Keller's common law tort claims based on preemption under 49 U.S.C. 41713(b)(1).  Further, because the Keller's common law tort claims are viable, it was incorrect for the trial court to dismiss Keller's punitive damages claims.

{¶31} Keller's first, second, third, and fourth Assignments of Error are sustained.

*V.*

{¶32} In Keller's fifth Assignment of Error, she argues the trial court erred in granting summary judgment on her breach of contract claim against Appellees Chautauqua Airlines and Republic Airlines.  We agree.

{¶33} The standard for granting summary judgment is delineated in *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996): " * * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims.  The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case.  Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims.  * * *"

{¶34} Appellees' joint motion for summary judgment was based on Continental's Contract of Carriage. It states:

Transportation of Passengers and Baggage provided by Continental Airlines, Inc., Continental Micronesia, Inc. and Carriers doing business as Continental Express or Continental Connection, are subject to the following terms and conditions, in addition to any terms and conditions printed on or in any ticket, ticket jacket or eticket receipt, or specified on any internet site, or published schedules. By purchasing a ticket or accepting transportation, the passenger agrees to be bound thereby.

{¶35} Chautauqua was the carrier for Keller's Continental Express flight pursuant to Continental's Contract of Carriage.

{¶36} Rule 4(I) of the contract states, "[s]eat assignments are not guaranteed and are subject to change without notice. CO reserves the right to reseat a Passenger for any reason, including from an extra legroom seat for which the applicable fee has been paid." The trial court found this provision to state that Keller's confirmed seat was not guaranteed and therefore Appellees did not breach the contract.

{¶37} Keller, however, argued in her response to the motion for summary judgment that Rule 3(B) of the Continental Contract of Carriage created an ambiguity for the applicability of Rule 4(I) to the facts of this case. Rule 3(B) states:

This Contract of Carriage is subject to applicable laws, regulations, rules, and security directives imposed by governmental agencies * * * In the event of a conflict between the Rules contained herein and such

governmental laws, regulations, rules, security directives and their corresponding effects on CO's operation, the latter shall prevail.

{¶38} In 1986, the Air Carrier Access Act, 49 U.S.C. 41705, was enacted to require air carriers to take steps to accommodate passengers with a disability. The federal regulations enacted pursuant to the Air Carrier Access Act regulate seat assignments for a disabled individual.

{¶39} Upon our de novo review, we find there is a genuine issue of material fact as to whether Appellees Chautauqua Airlines and Republic Airlines breached its contract with Keller based on the language of the Contract of Carriage and the regulations promulgated by the Air Carrier Access Act.

{¶40} Keller's fifth Assignment of Error is sustained.

**CONCLUSION**

{¶41} The first, second, third, and fourth Assignments of Error of Plaintiff-Appellant Evelyn Keller are sustained.

{¶42} The fifth Assignment of Error of Plaintiff-Appellant Evelyn Keller is sustained.

{¶43} The judgment of the Licking County Court of Common Pleas is reversed and this case is remanded for further proceedings consistent with this opinion and law.

By Delaney, J.

Hoffman, P.J. and

Wise, J. concur.

_____

_____

_____

JUDGES

[Cite as *Keller v. Dundon*, 2013-Ohio-2727.]

IN THE COURT OF APPEALS FOR LICKING COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| EVELYN KELLER | : | |
| | : | |
| Plaintiff-Appellant | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| MAUREEN DUNDON, ET AL | : | |
| | : | |
| Defendants-Appellees | : | CASE NO. 12-CA-73 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio is reversed and remanded for further proceedings.  Costs assessed to Appellees.

_____

_____

_____

JUDGES