**Robin FENN, Plaintiff,**

v.

**AMERICAN AIRLINES, INC., Defendant.**

**Civ. A. No. 3:93–CV–538(L)(N).**

United States District Court,
S.D. Mississippi,
Jackson Division.

Nov. 19, 1993.

William S. Guy, Law Offices of William Guy, William E. Goodwin, Law Office of John Ott, McComb, MS, for plaintiff.

Dudley Collier Graham, Shell, Buford, Bufkin, Callicut & Perry, Jackson, MS, for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge:

This cause is before the court on the motion of defendant American Airlines, Inc. (American) to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff Robin Fenn has not responded to defendant's motion, although the time allowed for reply has passed. Having considered the record in this cause and memoranda of authorities submitted by American, together with additional pertinent authorities, the court concludes that defendant's motion is not well taken and should be denied.

The facts as alleged by plaintiff are as follows. On August 9, 1992, while a passenger on American Airlines Flight # 1041, Fenn, a certified nurse, observed that a female passenger was having difficulty breathing. With the permission of the stewardess and the consent of the passenger, Fenn administered medical care and treatment until the plane landed an hour later. At that time, the woman accused Fenn of stealing her ring. An American employee informed plaintiff that he would have to remain on board, and once the remaining passengers had exited the plane, Fenn was escorted by an Airline employee into a small room inside the airport, and was held there for an unascertained period. At some point during this detention, Fenn was led from the room into an open corridor of the airport, where one of defendant's employees allegedly yelled, "Is this the man who took your ring?"

Plaintiff originally brought this action in the Circuit Court of Pike County, Mississippi asserting claims against American for false imprisonment and slander. American timely removed the case, alleging that plaintiff's state law tort claims are preempted by § 1305(a) of the Airline Deregulation Act (ADA), 49 U.S.C.App. § 1301 et seq. American has now moved to dismiss.

If plaintiff's claims are preempted, as urged by American, then his complaint must be dismissed as the ADA provides no private right of action.[1] The question, then, is whether the preemptive scope of § 1305 extends to plaintiff's state law tort claims. That statute provides:

[N]o State ... shall enact or enforce any law, rule, or regulation, standard, or other provision having the force or effect of law *relating to* rates, routes, or *services* of any

---

1. Prior to the passage of the ADA in 1978, FAA regulation of air carriers did not restrict common law or statutory state law remedies against airlines. However, it has been recognized that in passing the ADA, Congress intended that there be no private causes of action relating to air carriers' services, rates or routes. *See Air Transp. Ass'n v. Public Util. Comm'n of California*, 833 F.2d 200, 207 (9th Cir.1987); *Montauk–Caribbean Airways, Inc. v. Hope*, 784 F.2d 91, 97 (2d Cir.1986).

air carrier having authority under subchapter IV of this chapter to provide air transportation. (emphasis supplied).

American contends that plaintiff's claims relate to the performance of passenger services, presumably in the nature of security services, and thus are preempted under the terms of § 1305. The court concludes otherwise, for in the court's opinion, plaintiff's claims do not concern "services" of the type contemplated by Congress in enacting § 1305, and even if they did involve services of the nature envisioned by Congress, his claims do not sufficiently "relate to" those services.

The issues embraced by plaintiff's claims obviously do not pertain to American's "rates [or] routes." Thus, to be preempted, they must relate to "services." A question thus arises as to what types of services are addressed by § 1305. Resolution of this issue requires consideration of the objectives and history of the ADA.

The origin and purpose of this Act have been set forth too many times to justify a detailed exposition by this court on that subject. Most recently, in *Hodges v. Delta Airlines, Inc.*, 4 F.3d 350 (5th Cir.1993), a panel of the Fifth Circuit addressed these matters as follows:

> In evaluating the scope of § 1305(a) preemption, one must bear in mind its origin in the ADA, an economic deregulation statute. The Federal Aviation Act of 1958 (FAA), 72 Stat. 731, 49 U.S.C.App. § 1301 *et. seq.* (as amended), conferred on the Civil Aeronautics Board economic regulatory authority over interstate air transportation. The FAA did not expressly preempt state regulation of intrastate air transportation. In 1978, Congress amended the FAA after determining that efficiency, innovation, low prices, variety, and quality would best be furthered by reliance on competitive market forces in the airline industry. Congress enacted the ADA to dismantle the pervasive federal economic regulation of the interstate airline indus-

try. To prevent the states from frustrating the goals of federal deregulation by establishing or maintaining economic regulations of their own, Congress included in the ADA section 1305, which preempts the states from enforcing any law "relating to rates, routes, or services" of any air carrier. [*Morales v. Trans World Airlines, Inc.*, —— U.S. ——, [——,] 112 S.Ct. 2031, 2034[, 119 L.Ed.2d 157] (1992) ].

*Hodges*, 4 F.3d at 353. *See also Margolis v. United Airlines, Inc.*, 811 F.Supp. 318 (E.D.Mich.1993); *Vail v. Pan American World Airways, Inc.*, 260 N.J.Super. 292, 616 A.2d 523 (N.J.Super.App.Div.1992).

The Fifth Circuit went on to point out in *Hodges* that even though the ADA was passed in 1978, only in more recent years, and especially following the Supreme Court's 1992 decision in *Morales v. Trans World Airlines, Inc.*, —— U.S. ——, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), has the notion that § 1305 preempts state tort claims been seriously considered. *Hodges*, 4 F.3d at 352. Indeed, as one court has aptly observed,

> [p]rior to *Morales*, ... case law concerning preemption divided fairly neatly between economic or regulatory issues and personal injury, damage or negligence issues.... [M]ost courts which considered the issue held that preemption under section 1305(a) was a broad prohibition against incursions into the field of air carrier regulation. *Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773 (5th Cir.) (state deceptive advertising laws), *cert. denied.*, 498 U.S. 926, 111 S.Ct. 307, 112 L.Ed.2d 261 (1990); *O'Carroll v. American Airlines, Inc.*, 863 F.2d 11 (5th Cir.) (claim for "wrongful exclusion" of boisterous passenger), *cert denied sub nom. O'Carroll v. Chaparral Airlines, Inc.*, 490 U.S. 1106, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989); *Hingson v. Pacific Southwest Airlines*, 743 F.2d 1408 (9th Cir.1984) (discrimination against blind passengers) [2]; *Diefenthal v. Civil Aeronautics Board*, 681 F.2d 1039 (5th Cir.1982) (smok-

---

**2.** This court would note that in *Hingson*, although the state regulation of seating policies for handicapped passengers was held to be preempted on the basis that "[r]egulation of air carrier seating policies for handicapped passengers in-

volves the regulation of services within the meaning of section 1305(a)(1)," 743 F.2d at 1415, the court held that plaintiff's state law claims for intentional infliction of emotional distress were not preempted, *id.* at 1416.

ing regulations), *cert. denied,* 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983); *Anderson v. USAir, Inc.,* 818 F.2d 49 (D.C.Cir.1987) (regulation of air carrier seating policies for handicapped passengers); *Von Anhalt v. Delta Air Lines, Inc.,* 735 F.Supp. 1030 (S.D.Fla.1990) (claims for negligence, defamation, assault and battery relating to exclusion of boisterous passengers).

Several of these decisions, i.e., *O'Carroll, Hingson, Diefenthal,* and *Anderson,* relied on or mentioned the preemption of state law "relating to ... services." Yet the "services" referred to are airline policies such as those examples listed in the policy statement published in the Federal Register ..., that is, liquidated damages for bumping, denial of boarding, segregation of smoking passengers, etc.[3] ...

*Margolis v. United Airlines, Inc.,* 811 F.Supp. 318, 321 (E.D.Mich.1993).

As the *Margolis* court observed, pre-*Morales* cases presenting "economic or regulatory issues" were decided in favor of preemption whereas personal injury, damage or negligence issues were typically not held subject to § 1305.[4] The Supreme Court in *Morales,* however, suggested a broad interpretation of the "relat[ing] to" language of § 1305, finding that the ADA preempts "state enforcement actions having a connection with or reference to 'rates, routes, or services.'" *Morales,* —— U.S. at ——, 112 S.Ct. at 2037.[5] *Morales* did not involve common law tort claims, but rather concerned advertising and in particular, the question of whether efforts by state attorneys general to enforce state laws prohibiting deceptive advertising by airlines fell within the preemptive scope of § 1305. Nevertheless, the Court's expansive interpretation of § 1305 in *Morales* impacted the question of whether the preemptive reach of § 1305 extends to common law tort claims.

Though even after *Morales,* the majority of courts have refused to hold that common law tort claims are preempted by § 1305, post-*Morales* decisions which have addressed the breadth of § 1305 evince considerable confusion and conflict over the proper interpretation and application of § 1305 in light of *Morales.*[6] So far as this court can discern,

3. The policy statement to which the court referred in *Margolis* was that of the Civil Aeronautics Board implementing the ADA, *see infra* note 8.

4. *See, e.g., Miller v. Northwest Airlines,* 253 N.J.Super. 618, 602 A.2d 785 (N.J.Super.App.Div.1992) (no preemption of passenger's state law causes of action for false arrest and negligent and intentional infliction of emotional distress); *Stewart v. American Airlines,* 776 F.Supp. 1194 (S.D.Tex.1991) (no preemption where plaintiff was injured when nose wheel deflated). *But see Howard v. Northwest Airlines, Inc.,* 793 F.Supp. 129, 132 (S.D.Tex.1992) (wrongful death claim for service in attending to ill passenger preempted).

5. In defining the meaning of the phrase "relating to" under § 1305, the Supreme Court used its liberal definition of that phrase under the preemption provision of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1144(a) as a reference. There is, however, at least one notable difference between ERISA and the ADA: ERISA, unlike the ADA, recognizes private causes of action.

6. *See, e.g., Doricent v. American Airlines, Inc.,* 1993 WL 437670, No. 91–12084Y, 1993 U.S. Dist. LEXIS 15143 (D.Mass. Oct. 19, 1993) (claims of racial discrimination, intentional infliction of emotional distress, and assault and battery not preempted since such claims "have nothing whatsoever to do with any legitimate or quasi-legitimate industry-wide practice of affording airline service"); *Levy v. American Airlines,* 1993 WL 205857, 90 Civ. 7005, 1993 U.S. Dist. LEXIS 7842 (S.D.N.Y. June 9, 1993) (claim of extradited prisoner who was transported by federal agents via American flight that airline employees failed to intervene with agents on his behalf to ensure he received medical treatment and safe transport could have only incidental effect on airline industry and thus were not preempted); *Williams v. Express Airlines, Inc.,* 825 F.Supp. 831 (W.D.Tenn.1993) (handicapped passenger's claims of false imprisonment based on allegations that he was prevented from boarding flight and strapped into an immobile aisle chair at airport gate to await alternative flight were preempted since the claims were connected to airline's service obligation to permit him to go where he had a right to go, i.e., on board, and the service obligation to provide mobility assistance to handicapped passengers); *Margolis,* 811 F.Supp. at 322 (passenger's claim against airline based on allegation that she was struck by luggage carrier which fell from overhead bin was not preempted); *Cannava v. USAir, Inc.,* Av.Liti. Rep. (Andrews) para. 18021, (D.Mass. Jan. 7, 1993; No. 91–30003–F) (plaintiff's claim for breach of contract and intentional infliction of emotional distress premised on plaintiff's allega-

the differences in the results reached by courts in this area do not necessarily depend on factual differences or distinctions in the nature of the claims sought to be maintained, but rather on the courts' interpretations of *Morales*. Some courts have read *Morales* broadly and found claims preempted, regardless of the nature of the claims, so long as they related in any way to an airline's performance of services of any kind. Others have construed *Morales* in a more limited fashion and been less willing to find preemption.

This analytical conflict is exemplified in the decisions of the Fifth Circuit. In *Baugh v. Trans World Airlines, Inc.*, 915 F.2d 693 (5th Cir.1990), an unpublished decision, a panel of the Fifth Circuit held that a passenger's claim of common law negligence was preempted. In that panel's opinion, "[s]ince the plaintiff "allege[d] her injury occurred during a flight and was caused by a flight attendant in the course of employment," the negligence action [arose] out of the services afforded passengers by TWA." *Baugh*, 915 F.2d 693 (1990). More recently, in *Hodges v. Delta Airlines, Inc.*, 4 F.3d 350 (5th Cir. 1993), another panel of the Fifth Circuit similarly held that a state law tort claim for negligence was preempted by § 1305 of the ADA but expressed its "belie[f] [that] this [was] the wrong result." *Hodges*, 4 F.3d at 352. The *Hodges* panel, despite its conclusion as to what the result *ought to be*, i.e., that the negligence claim ought not be ruled preempted, followed *Baugh*, viewing it as binding Fifth Circuit precedent, and reached the decision it considered to be compelled by *Baugh*. The court, however, declared its dissatisfaction with this result, stating that it would find no preemption if it were to decide the issue in the first instance, and urged *en banc* review by the Fifth Circuit.[7] *Id.*

As indicated, the plaintiffs in both *Baugh* and *Hodges* asserted personal injury claims against air carriers for negligence. In *Baugh*, the plaintiff complained that a stewardess had negligently stomped on his foot during flight, injuring him, and in *Hodges*, the plaintiff, who was injured when a case containing bottles of rum fell onto her when a fellow passenger opened an overhead compartment, claimed that negligence on the part of airline employees had caused her injury. And as indicated, both claims were held to be preempted, though the *Hodges* panel reached that result solely solely because it considered that it was bound to do so by *Baugh*. The court in the case at bar, however, is not similarly constrained, since in this court's view, the claims alleged by Fenn are not sufficiently analogous to those at issue in *Baugh* and *Hodges* so as to compel the conclusion reached by the court in those cases.

This court, as did the *Hodges* panel, discerns in the ADA and its legislative history no sound basis for concluding that claims for bodily injury are *ipso facto* preempted so long as the defendant is an air carrier and the injury occurs during the course of a flight as the result of some act or omission of an airline employee. The *Hodges* panel expressed the view, a view with which this court is in accord, that while the scope of state laws that "relate to" services must be broadly interpreted under *Morales*, "the nature of the 'services' preempted by § 1305(a) is more narrow than might at first be supposed." *Hodges*, 4 F.3d at 353. The court explained:

> Considering the definition of "services" that is most plausible in light of the ADA's purpose and historical regulatory antecedents, it appears that "services" is not coextensive with airline "safety". Therefore, insofar as state law or regulation imposes liability on airlines for breaching tort duties related to the safety of persons, it should not be preempted by § 1305(a). The intent of this distinction is to secure by federal preemption the benefits of economic deregulation of the airline industry,

tions that ticketing agent grabbed his tickets, treated him rudely and temporarily prevented him from boarding plane were preempted since agent's actions constituted "services"); *Lawal v. British Airways, PLC*, 812 F.Supp. 713 (S.D.Tex. 1992) (passenger's claims for false arrest, false imprisonment, assault and battery, and intentional infliction of emotional distress held preempted since "state law claims relating to the treatment of the passengers are preempted" by § 1305).

7. The court is advised that a petition for *en banc* rehearing was filed in *Hodges* on November 12, 1993.

while maintaining the traditional role ·of state law in adjudicating bodily injury claims.

"Services" generally represent a bargained-for or anticipated provision of labor from one party to another. If the element of bargain or agreement is incorporated in our understanding of services, it leads to a concern with the contractual arrangement between the airline and the user of the service. Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself. These matters are all appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline. It is these features of air transportation that we believe Congress intended to de-regulate as "services" and broadly to protect from state regulation.[8]

*Hodges,* 4 F.3d at 354.[9] Safety, in the court's opinion, was not a "service" contemplated by the ADA and thus, in the court's opinion, a claim challenging the airline's failure to keep the plaintiff passenger safe from harm should not be preempted.[10]

Perhaps it is at least arguable that the contract for carriage between an airline and its passengers embraces an implied obligation on the part of the airline to afford those passengers with *safe* carriage, so ·that a claim by a passenger for bodily injury caused by the airline's employees could be said to implicate airline "services."[11] But nothing about Fenn's claims involves, directly or indirectly, "safety." Nor do his claims involve any other possible airline "service" envisioned by Congress in adopting the ADA. Manifestly, this is so as to plaintiff's claim for slander. And in the court's opinion, so, too, is it true as to·his false imprisonment claim since the detention of an alleged thief is by no means an airline· "service."

Even were the court to assume for ·the sake of argument that Fenn's claims involve airline services, though, the court would find preemption improper since it cannot be reasonably concluded that either of his claims relates, directly or indirectly, to any such service. *Morales* did not hold or suggest that *all* state laws having *any* effect on airline "rates, routes, or services" would be

8. The *Hodges* court's reasoning on this point derived, in part, from the Civil Aeronautics Board's policy statement implementing the ADA, in which the Board opined:

[A] state may not interfere with the services that carriers offer in exchange for their rates and fares. For example, liquidated damages for bumping (denial of boarding), segregation of smoking passengers, minimum liability for loss, damages and delayed baggage, and ancillary charges for headsets, alcoholic beverages, entertainment, and excess baggage would clearly be "service" regulation within the meaning of section 105.

44 Fed.Reg. 9948, 9951 (Feb. 15, 1979). The Board concluded:·

[P]reemption extends to all of the economic factors that go into the provision of the *quid pro quo* for passenger's [sic] fare, including flight frequency and timing, liability limits, reservation and boarding practices, insurance, smoking rules, meal service, entertainment [and] bonding and corporate financing.

*Id.*

9. While the court recognizes that in these peculiar circumstances, these statements by the *Hodges* panel constitute dicta and are not binding, the panel's analysis is persuasive.

10. Issued contemporaneously with *Hodges* was another decision by the same panel in which the

panel, again in reliance on *Baugh,* held a negligence claim against an airline preempted. In *Smith v. American West Airlines, Inc.,* 4 F.3d 356 (5th Cir.1993), passengers aboard a hijacked airplane sued the airline contending that the airline's employee had been negligent in allowing the hijacker to board the aircraft. They alleged, in particular, that the airline "failed to use boarding practices stringent enough to prevent [the hijacker] from boarding the aircraft, as a result of which plaintiff's safety was seriously compromised." 4 .F.3d at 357. The court in *Smith* considered it "a difficult question whether any negligence that [could] be attributed to the [airline] for permitting [the hijacker] to board [the flight] [was] integrally 'related to' the airline's services and [had] the 'forbidden significant effect' that compels section 1305 preemption." *Id.* (quoting *Morales,* —— U.S. at ——, 112 S.Ct. at 2039). .The claims in *Smith,* however, did "relate to" boarding services, if only indirectly, and thus were certainly more appropriately held preempted than were the claims in *Hodges.*

11. Like the panel in *Hodges,* though, this court seriously doubts the correctness ·of an analysis which essentially equates "safety" with· "services."

preempted. Rather, only laws having "a significant [economic] impact" on an airline's rates, routes, or services were subject to preemption. *Morales,* —— U.S. at ——, 112 S.Ct. at 2039. *See also Doricent,* 1993 WL 437670 LEXIS, at 5 (*Morales* Court interpreted purpose behind § 1305 as an economic one, such that question of preemption hinges on economic impact of the state action on airline rates); *cf. Levy v. American Airlines,* 1993 WL 205857, 90 Civ. 7005, 1993 U.S. Dist. LEXIS 7842 (S.D.N.Y. June 9, 1993) (§ 1305 does not preempt state law when the effect of such law on airline industry is merely incidental). Implicitly, if not explicitly excluded from preemption were claims which threatened no economic consequences or which had the potential for mere negligible economic consequences to the airlines. *Doricent,* 1993 WL 437670 LEXIS, at *6 (*Morales* Court "markedly limited the potential sweep of the ... phrase ["relating to"] at least to those classes of cases which have some measurable economic effect on the rates, routes and services of the airline industry as a whole.") Indeed, the *Morales* Court recognized that " '[s]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner' to have preemptive effect." —— U.S. at ——, 112 S.Ct. at 2040 (quoting *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 100, n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490) (bracketed material in original). For the court to adopt defendant's expansive interpretation of § 1305 and hold in this case that the claims asserted by Fenn are preempted would, in effect, be tantamount to holding that all state law tort claims against airlines are preempted. That is to say, Fenn's claims are far too insignificantly "related to" any possible service American's employees was performing to justify preemption.[12]

The court does not mean to suggest that it considers that all state law tort claims should be exempt from the preemptive scope of § 1305. To the contrary, the court can easily envision circumstances in which such claims would fall within the terms of that statute.[13] The facts which are alleged to comprise Fenn's causes of action in this case, however, do not. Therefore, it is ordered that defendant's motion to dismiss is denied. It is further ordered that this case be remanded to the Circuit Court of Pike County, Mississippi since this court lacks subject matter jurisdiction over plaintiff's complaint.

SO ORDERED.

---

**12.** Indeed, the court in *Hodges* opined that most common law tort claims should be permitted against air carriers since the relation of those claims to "rates, routes, and services" of the airlines would normally be too insignificant to warrant preemption under § 1305. *Hodges,* 4 F.3d at 347.

**13.** *See, e.g., Williams v. Express Airlines, Inc.,* 825 F.Supp. 831 (W.D.Tenn) (false imprisonment claim asserted by handicapped passenger relating to airline's failure to provide mobility services for handicapped passengers).