Robert L. **LEWIS,** Plaintiff,

v.

**CONTINENTAL AIRLINES, INC.,** City of Houston, Houston Police Department, Globe Security Services, Inc., a/k/a Globe Security Systems, and Sandra D. Tisdel, Defendants.

No. H–98–2212.

United States District Court, S.D. Texas.

March 10, 1999.

Susan J. Taylor, Bond Taylor and Lee, Houston, TX, for Robert L. Lewis, plaintiff.

Rachel Giesber, Fulbright & Jaworski, Houston, TX, for Continental Airlines Incorporated, Sandra D. Tisdel, defendants.

Richard John Urra, Office of City Attorney, Houston, TX, for City of Houston, Houston Police Dept., defendants.

Claude R. Treece, Sewell and Riggs, Houston, TX, for Globe Airport Security Services Inc, aka, Globe Security Systems, defendant.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

### I. *Introduction*

Pending before the court is Defendant Continental Airlines, Inc.'s ("Continental")

Motion to Dismiss (# 7). Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that Continental's motion to dismiss should be denied.

## II. *Factual Background*

· Plaintiff Robert L. Lewis ("Lewis") was traveling on a Continental flight from Kansas City, Missouri, to Atlanta, Georgia, on April 25, 1997. His itinerary included a connecting flight at Bush Intercontinental Airport in Houston, Texas. Lewis contends that, having arrived on time for his connecting flight, he approached the gate agent, who informed him that the flight had been delayed thirty minutes. He chose to wait in a seat across from the ticket counter. About thirty minutes later, he noticed that the same ticket agent had moved to another gate. He approached the agent and was told that his flight had departed ten minutes earlier. According to Lewis, the airline did not announce the departure of the connecting flight. Although he missed the flight, his luggage remained on board en route to Atlanta.

Lewis then spoke with Concourse Superintendent Paul Montague about his dilemma. He offered Lewis complimentary overnight accommodations and meal vouchers, agreeing that Continental would book him on the earliest possible flight to Atlanta the following morning. Lewis stayed the night at the hotel arranged by Continental and arrived at the airport early the next morning hoping to book a flight departing earlier than Continental's 11:00 a.m. flight to Atlanta. According to Lewis, a Continental ticket agent informed him that Delta Airlines had a 6:00 a.m. flight to Atlanta and instructed him to go to a Continental ticket counter to make the arrangements. At the counter, Lewis claims that he spoke with Continental ticket agent Sandra D. Tisdel ("Tisdel"), a codefendant in this action. Lewis alleges in his complaint that he informed Tisdel about his experience the previous night, but "Tisdel was quite rude and not helpful in obtaining the flight ticket for the Delta Airlines flight." Lewis admits that he stated "in frustration to Tisdel that there could have been a bomb in the luggage that went on to Atlanta the previous night." In its answer to Lewis's complaint, Continental contends that "the plaintiff indicated that a bomb was in his luggage or aboard an airplane as alleged in ¶ IV(11) of the Complaint." Tisdel responded to Lewis's comment by remarking that she should call security and then proceeded to contact a security officer. At that point, Lewis states "[u]pon information and belief" an employee of defendant Globe Airport Security Services, Inc. ("Globe") approached him, requested picture identification, and "was rude and obnoxious and treated Mr. Lewis like a criminal." The Globe employee then turned Lewis over to officers of the Houston Police Department ("HPD"), who took him to an interrogation room. Lewis contends that he "was fully cooperative and allowed them to search his person as well as a computer bag that he was carrying. Nothing of any substance was found either on [his] person or in the computer bag."

Lewis claims that following the interrogation, he was handcuffed and taken to the Harris County Jail, where he was incarcerated for twelve to fourteen hours and charged with aggravated assault against Tisdel and with making a terroristic threat. He also contends that despite his informing the HPD that he was epileptic and that his medication was in his luggage that went on to Atlanta the previous evening, the HPD refused him any medical attention. Ultimately, on July 16, 1997, the charges against Lewis were dismissed for insufficient evidence.

On July 14, 1998, Lewis filed this action in federal court, alleging a variety of claims against all the defendants: negligence, gross negligence, malicious prosecution, false arrest, intentional infliction of emotional distress, assault, and violation of his right to be free from unwarranted sei-

zure of his person under the Fourth and Fourteenth Amendments of the United States Constitution. His claims against the City of Houston and HPD were subsequently dismissed. On August 21, 1998, Continental filed its motion to dismiss, arguing that Lewis's state law claims against it are preempted by the Federal Aviation Act ("FAA"), as amended by the Airline Deregulation Act ("ADA"). *See* 49 U.S.C. § 41713 *et seq.* Lewis responds that because none of his claims relates to the prices, routes, or services provided by Continental, they are not preempted.

### III. *Analysis*

#### A. *Standard for Dismissal*

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests only the formal sufficiency of the statement of a claim for relief. It is not a procedure for resolving contests about the facts or the merits of a case. In ruling on a motion to dismiss, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 261 (5th Cir.1999); *Jefferson .v. Lead Indus. Ass'n, Inc.,* 106 F.3d 1245, 1250 (5th Cir. 1997); *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996); *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284–85 (5th Cir.1993). The court may not look beyond the four corners of the plaintiff's pleadings. *See Indest,* 164 F.3d at 261; *Baker,* 75 F.3d at 196; *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir.1992). Thus, the motion must be denied unless it appears to a certainty that the plaintiff can prove no set of facts that would entitle him to relief. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Jefferson,* 106 F.3d at 1250; *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th

Cir.1995); *Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 524 (5th Cir.1994); *U.S. Abatement Corp. v. Mobil Exploration & Producing U.S., Inc.,* 39 F.3d 556, 559 (5th Cir.1994); *McCartney,* 970 F.2d at 47. "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Jefferson,* 106 F.3d at 1250; *accord Fernandez–Montes,* 987 F.2d at 284; *see Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir. 1994).

#### B. *State Law Claims*

Continental contends that Lewis's state law claims are preempted by § 41713 of the ADA. Under the ADA provision entitled "preemption":

> A State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1) (formerly 49 U.S.C.App. § 1305(a)(1)). Through this provision, Congress expressly preempted state law as applied to the price, route, or service of an air carrier. *See Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992); *Hodges v. Delta Airlines, Inc.,* 44 F.3d 334, 336 (5th Cir.1995); *Trans World Airlines, Inc. v. Mattox,* 897 F.2d 773, 787 (5th Cir.), *cert. denied,* 498 U.S. 926, 111 S.Ct. 307, 112 L.Ed.2d 261 (1990); *O'Carroll v. American Airlines, Inc.,* 863 F.2d 11, 13 (5th Cir.), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989). "Congress preempted this area to maintain uniformity and to avoid the confusion and burdens that would result if interstate and international airlines were required to respond to standards of individual states." *Butcher v. City of Houston,* 813 F.Supp. 515, 516 (S.D.Tex.1993) (quoting *Trans World Air-*

*lines, Inc.,* 897 F.2d at 787). "Claims that have 'a connection with, or reference to' an airline's prices, routes, or services are therefore preempted under the statute." *Smith v. Comair, Inc.,* 134 F.3d 254, 257 (4th Cir.1998) (quoting *Morales,* 504 U.S. at 384, 112 S.Ct. 2031). Even general statutes, when specifically applied to the airline industry, are preempted by the ADA. *See id.* (citing *Morales,* 504 U.S. at 386, 112 S.Ct. 2031). State actions that would affect airline prices, routes, or services " 'in too tenuous, remote, or peripheral a manner,' " however, are not preempted. *See id.* (quoting *Morales,* 504 U.S. at 390, 112 S.Ct. 2031); *Hodges,* 44 F.3d at 336; *Peterson v. Continental Airlines, Inc.,* 970 F.Supp. 246, 249 (S.D.N.Y. 1997).

The "clear and manifest" purpose of Congress in enacting the ADA was to achieve the economic deregulation of the airline industry by promoting "maximum reliance on competitive market forces." *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 230, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). "Nothing in the Act itself, or its legislative history, indicates that Congress had a 'clear and manifest purpose' to displace state tort law in actions that do not affect deregulation in more than a 'peripheral manner.' " *Charas v. Trans World Airlines, Inc.,* 160 F.3d 1259, 1265 (9th Cir.1998) (citing *Morales,* 504 U.S. at 390, 112 S.Ct. 2031). In fact, it is apparent that Congress did not intend to preempt all state law claims for personal injury or property damage, as the ADA expressly requires air carriers to maintain insurance "sufficient to pay ... for bodily injury to, or death of, an individual or for loss of, or damage to, property of others, resulting from the operation or maintenance of the aircraft ...." 49 U.S.C. § 41112; *see* 14 C.F.R. § 205.5(a) (1999); *Charas,* 160 F.3d at 1265; *Hodges,* 44 F.3d at 338; *Cartegena v. Continental Airlines,* 10 F.Supp.2d 677, 681 (S.D.Tex.1997); *Barbakow v. USAir, Inc.,* 950 F.Supp. 1145, 1147 (S.D.Fla.1996). Complete preemption of state personal injury law would render the insurance requirement pointless. *See Charas,* 160 F.3d at 1265; *Hodges,* 44 F.3d at 338.

The ADA also contains a savings clause which provides that "[a] remedy under this part is in addition to any other remedies provided by law." 49 U.S.C. § 40120(c). This provision is a re-codification of FAA § 1506, which provided that " '[n]othing ... in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.' " *See Morales,* 504 U.S. at 378, 112 S.Ct. 2031 (quoting 49 U.S.C.App. § 1506 (1995)); *see also Charas,* 160 F.3d at 1265; *Hodges,* 44 F.3d at 338 n. 7. The United States Supreme Court has noted, however, that this " 'saving' clause is a relic of the pre-ADA/no pre-emption regime.... A general 'remedies' saving clause cannot be allowed to supersede the specific substantive pre-emption provision." *Morales,* 504 U.S. at 385, 112 S.Ct. 2031; *see Wolens,* 513 U.S. at 222, 115 S.Ct. 817; *Hodges,* 44 F.3d at 338 n. 7. "Before Congress enacted the ADA, it was understood that the 'savings clause' preserved state law personal injury actions." *Somes v. United Airlines, Inc.,* No. 98–CV–10183–MEL, 1999 WL 21238, at *2 (D.Mass. Jan. 11, 1999) (citing *Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 298, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976)).

Since the enactment of the ADA, however, the courts are in disagreement concerning the interrelationship between the preemption clause and the savings clause with respect to state tort claims. *See id.* In a concurring opinion in *Hodges,* Judge Jolly observed that in accordance with settled principles of statutory construction, the preemption provision and the savings clause must be read together "unless there is a 'positive repugnancy' between the two." 44 F.3d at 341 (Jolly, J., concurring) (quoting *MCorp Financial, Inc. v. Board of Governors,* 900 F.2d 852, 856 (5th Cir. 1990), *aff'd in part, rev'd in part on other*

*grounds,* 502 U.S. 32, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991)); *see Barbakow,* 950 F.Supp. at 1148; *Von Anhalt v. Delta Air Lines, Inc.,* 735 F.Supp. 1030, 1031 (S.D.Fla.1990). Interpreting the preemption clause as encompassing only official, government-imposed policies, Judge Jolly opined that "claims by private individuals to obtain remedies for an asserted breach of the duty of reasonable care—traditional, well-settled common law tort remedies, in short—are not preempted by the ADA preemption provision." *Hodges,* 44 F.3d at 340 n. 2, 341 (Jolly, J., concurring); *accord Charas,* 160 F.3d at 1265 (reading the preemption clause with the savings clause evidences congressional intent to prevent state regulation of airlines while preserving state tort remedies which do not significantly impact deregulation); *Barbakow,* 950 F.Supp. at 1148 (the legislative history of § 1305 indicates that Congress did not intend to preempt common law tort actions); *Margolis v. United Airlines, Inc.,* 811 F.Supp. 318, 324–25 (E.D.Mich.1993) (common law negligence claims do not purport to regulate air carrier services).

■ In this case, the determinative issue is whether the state law causes of action alleged by Lewis "fall within the ambit of 'rates, routes, or services' of an air carrier." *Butcher,* 813 F.Supp. at 516. A law bears a relation to a particular subject " 'if it has a connection with or reference to' that subject." *Id.* (quoting *Trans World Airlines, Inc.,* 897 F.2d at 783); *see Lawal v. British Airways,* PLC, 812 F.Supp. 713, 720 (S.D.Tex.1992). "The ordinary meaning of [relating to] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with'— . . . and the words thus express a broad pre-emptive purpose." *Morales,* 504 U.S. at 383, 112 S.Ct. 2031 (quoting BLACK'S LAW DICTIONARY 1158 (5th ed.1979)); *see Hodges,* 44 F.3d at 336.

■ The "services" of an air carrier, as that term is used in § 41713, must necessarily pertain to services particular to the airline industry. *See Butcher,* 813 F.Supp. at 517. The Fifth Circuit has explained: "Services" generally represent a bargained—for or anticipated provision of labor from one party to another. If the element of bargain or agreement is incorporated in our understanding of services, it leads to a concern with the contractual arrangement between the airline and the user of the service. Elements of the air carrier service bargain include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself. These matters are all appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline. It is these [contractual] features of air transportation that we believe Congress intended to de-regulate as "services" and broadly to protect from state regulation.

*Hodges,* 44 F.3d at 336 (quoting *Hodges v. Delta Airlines, Inc.,* 4 F.3d 350, 354 (5th Cir.1993) (citing *Wolens,* 513 U.S. at 226, 115 S.Ct. 817 ("describing claims concerning American Airlines' frequent flyer program as related to rates and 'services,' *i.e.,* access to flights and class-of-service upgrades . . . .")); *see Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1433 (7th Cir.1996); *Bayne v. Adventure Tours USA, Inc.,* 841 F.Supp. 206, 208 (N.D.Tex.1994).

■ The court must look at the facts that underlie the specific claims to determine whether the claims have "a connection with, or reference to an airline's prices, routes, or services." *Smith,* 134 F.3d at 259 (citing *Travel All Over the World, Inc.,* 73 F.3d at 1433). Only those tort claims that refer to or have a connection with airline rates, routes, or services are preempted by the ADA. *See Travel All Over the World, Inc.,* 73 F.3d at 1433. "[I]t is reasonable to interpret the 'service' of boarding to be limited to economic decisions concerning boarding, e.g., overbooking or charter arrangements, and contrac-

tual decisions whether to board particular ticketed passengers." *Smith v. America West Airlines*, 44 F.3d 344, 346–47 (5th Cir.1995); *see Moore v. Northwest Airlines, Inc.*, 897 F.Supp. 313, 315 (E.D.Tex. 1995); *Stewart v. American Airlines, Inc.*, 776 F.Supp. 1194, 1198 (S.D.Tex.1991). The Ninth Circuit recently held that, "in enacting the ADA, Congress intended to preempt only state laws and lawsuits that would adversely affect the economic deregulation of the airlines and the forces of competition within the airline industry"— not "passengers' run-of-the-mill personal injury claims." *Charas*, 160 F.3d at 1261. Hence, "[a] claim which, if successful, would have no effect on the economic or contractual aspects of airline service would be 'too tenuous, remote, or peripheral' to the purposes of the federal regulations to be preempted by them." *Ricard v. Valujet Airlines, Inc.*, No. Civ.A. No. 97–0317, 1997 WL 187391, at *1 (E.D.La. April 16, 1997) (quoting *Smith*, 44 F.3d at 347 (quoting *Morales*, 504 U.S. at 374, 112 S.Ct. 2031)). Therefore, claims "premised on unreasonable conduct that is unnecessary to the provision of a service" are not preempted under the ADA. *See Smith*, 134 F.3d at 259 (citing *Rombom v. United Air Lines, Inc.*, 867 F.Supp. 214, 222, 224 (S.D.N.Y.1994)). Thus, "suits stemming from outrageous conduct on the part of an airline toward a passenger generally will not be preempted under the ADA because the conduct too tenuously relates or is unnecessary to an airline's services." *Id.; see Chrissafis v. Continental Airlines, Inc.*, 940 F.Supp. 1292, 1298–99 (N.D.Ill. 1996) (distinguishing between false imprisonment claims that are preempted because they are based on an airline's refusal to transport a passenger and false imprisonment claims that are not preempted because they are based on an airline causing the arrest of a passenger without proper factual basis)).

A number of courts have attempted to clarify the circumstances under which preemption of a tort claim against an air carrier will be recognized. In *O'Carroll*, the plaintiff brought various undefined claims against an air carrier stemming from his allegedly wrongful exclusion from a flight. *See* 863 F.2d at 12. When the airline noticed an irregularity in the plaintiff's ticket, a flight attendant asked him to deplane and talk to the gate agent about the problem. *See O'Carroll*, 863 F.2d at 12. The plaintiff, who was intoxicated, uttered obscenities and refused to move. *See id.* The flight captain summoned the police, who removed the plaintiff from the plane. *See id.* Vacating a $260,273.23 damage award, the Fifth Circuit held that the plaintiff's common law claims were preempted by § 1305. *See id.* at 12–13. A later Fifth Circuit opinion, holding that a passenger's negligence claim for injuries sustained when bottles of rum fell on her from an overhead compartment were not preempted, distinguished *O'Carroll* as involving "state law claims arising from ... alleged wrongful exclusion [that] undeniably related only to the services provided by the airline." *Hodges*, 44 F.3d at 335, 339.[1]

In another Fifth Circuit case, *Smith v. America West Airlines*, passengers brought claims for negligence and gross negligence against an airline and a local supervisor for permitting a visibly deranged hijacker to board the aircraft. *See* 44 F.3d at 345. The court rejected the airline's preemption argument, reasoning

---

1. The ADA provides, "An air carrier shall provide safe and adequate interstate air transportation." 49 U.S.C. § 41702; *see O'Carroll*, 863 F.2d at 12–13. "Significantly, when Congress deregulated the airline industry in 1978 ..., it retained statutory provisions granting broad discretion to airlines in making safety-related boarding decisions." *Smith*, 134 F.3d at 258 (citing Air Transportation Security Act of 1974, Pub.L. No. 93–366, § 204, 88 Stat. 409, 418). Under the ADA, " '[s]ubject to regulations of the Administrator, an air carrier, intrastate air carrier, or foreign air carrier may refuse to transport a passenger or property the carrier decides is, or might be, inimical to safety.' " *Id.* (quoting 49 U.S.C. § 44902(b)).

that "[i]f appellants ultimately recover damages, the judgment could affect the airline's ticket selling, training or security practices, but it would not regulate the economic or contractual aspects of boarding. Any such effect would be 'too tenuous, remote or peripheral' to be preempted by § 1305(a)(1)." *Id.* at 347 (citing *Morales,* 504 U.S. at 390, 112 S.Ct. 2031). The court further observed:

> Neither the language nor history of the Act implies that Congress was attempting to displace state personal injury tort law concerning the safety of the airline business. The Supreme Court counsels that courts should not lightly infer in federal actions an attempt to preempt traditional state police powers.

*Id.* at 346 (citing *California v. ARC America Corp.,* 490 U.S. 93, 102, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989)).

Cases in which false arrest and false imprisonment claims have been found to be preempted generally involve situations where an airline failed or refused to provide a service to a passenger, circumstances which "clearly relate to airline services." *Chrissafis,* 940 F.Supp. at 1298 (citing *Williams v. Express Airlines I, Inc.,* 825 F.Supp. 831, 832–33 (W.D.Tenn. 1993); *Lawal,* 812 F.Supp. at 715, 720). The court noted that, in those cases, "the crux of the claim was the airline's refusal to transport the passenger." *Id.* In contrast, "where the gist of the false arrest and false imprisonment claim is that the airline caused the passenger to be arrested by authorities without a proper factual basis, courts have held that the claims are not related to services and, therefore, are not preempted." *Id.* (citing *Diaz Aguasviva v. Iberia Lineas Aereas de Espana,* 902 F.Supp. 314, 316 (D.Puerto Rico 1995), *vacated in part on other grounds,* 937 F.Supp. 141 (1996); *Curley v. American Airlines, Inc.,* 846 F.Supp. 280, 281–82 (S.D.N.Y.1994); *Bayne,* 841 F.Supp. at 207).

In *Fenn v. American Airlines, Inc.,* the plaintiff, a nurse, rendered medical assistance to a fellow passenger, who then accused him of stealing her ring once the plane had landed. *See* 839 F.Supp. 1218, 1219 (S.D.Miss.1993). An employee of the defendant airline kept the plaintiff on board the aircraft until the other passengers had disembarked, then took him to a small room in the airport for an unspecified period of time. *See id.* The plaintiff sued the airline for false imprisonment and slander. *See id.* The court held that the claims were not preempted by § 1305, as they did not involve "any . . . possible airline 'service' envisioned by Congress in adopting the [ADA]." *Id.* at 1223. The court further held that "the detention of an alleged thief is by no means an airline 'service.'" *Id.*

*Peterson v. Continental Airlines, Inc.* involved a dispute among passengers about seat assignments. When the plaintiff became disruptive, she was asked either to go to her assigned seat or leave the plane. *See* 970 F.Supp. at 248. According to the plaintiff, after she refused to comply, "without provocation or warning, four police officers lifted her from her seat, handcuffed her and forcibly removed her from the airplane." *Id.* She subsequently sued the airline, alleging various contract and tort theories, including false arrest and intentional infliction of emotional distress. *See id.* at 248, 250. The court noted that "the very nature of [the plaintiff's] allegations, *i.e.,* intentional infliction of emotional distress and civil rights violations, suggests that Continental acted outside the scope of its authority." *Id.* at 250. The court held that "because [the plaintiff's] claims are based on the notion that Continental abused its authority to provide a given service, preemption under Section 41713 is not warranted." *Id.* (citing *Rombom,* 867 F.Supp. at 224 ("'Because the flight crew's decision to have [plaintiff] arrested was allegedly motivated by spite or some unlawful purpose, [plaintiff's] subsequent tort claims arising out of this decision are at best tenuously related to an airline service'")). The court further ob-

served that "[the plaintiff's] claims allege 'outrageous conduct that goes beyond the scope of normal aircraft operations.'" *Id.* (quoting *Rombom*, 867 F.Supp. at 224).

In *Smith v. Comair, Inc.*, the plaintiff was attempting to board a connecting flight when an airline employee asked him "'to step aside'" and wait for a supervisor. *See* 134 F.3d at 256. According to the plaintiff, he was not given a reason for his detention until three hours later, when he was told that "he did not match the physical description contained in his Delta frequent-flyer account." *Id.* The plaintiff discovered, however, that Delta did not maintain a record of frequent-flyer account members' physical descriptions. *See id.* The plaintiff was later told that he was being detained because airline representatives had failed to ask for photographic identification before allowing him to board the first segment of his flight. *See id.* He was unable to provide the requested identification at the connecting airport because he had left it in his car parked at the departing airport. *See id.* An hour or two later, the supervisor gave the plaintiff a ticket to return to his point of departure. *See id.* While waiting to board the flight, the plaintiff stated that he "'would like to punch [the supervisor] in the mouth.'" *Id.* The supervisor then motioned to nearby security officers, who restrained the plaintiff until a police officer intervened and persuaded the supervisor to allow the plaintiff to board the returning flight. *See id.* at 256–57. The passenger subsequently sued the airline for breach of contract, false imprisonment, and intentional infliction of emotional distress. *See id.* at 257. The Fourth Circuit held that the plaintiff's intentional tort claims were preempted by § 41713 only "[t]o the extent [they were] premised on Comair's refusal to permit him to board his flight." *Id.* at 259. The court held, however, that "to the extent [the plaintiff's] claims are based on conduct distinct from Comair's determination not to grant permission to board, his false imprison-

ment and intentional infliction of emotional distress claims are not preempted." *Id.*

■ The district court in *Rombom v. United Air Lines, Inc.*, set forth a three-pronged test for determining whether a tort claim is preempted by § 41713. *See* 867 F.Supp. at 221–22. The first step requires defining whether the activity in dispute is an airline service. *See id.* at 222; *see also Peterson*, 970 F.Supp. at 250. If the activity at issue is not a service, the claim is not preempted. *See Rombom*, 867 F.Supp. at 222. If the activity is a service, the court then determines whether the claim affects the service directly or only "tenuously, remotely, or peripherally," in which case it is not preempted. *See id.* If the claim affects the service directly, the court considers "whether the underlying tortious conduct was reasonably necessary to the provision of the service." *Id.* (citing *Curley*, 846 F.Supp. at 284); *see Peterson*, 970 F.Supp. at 250. The court explained that the preemption provision should not be construed so as to insulate airlines from liability for personal injuries caused by conduct that is outrageous and beyond the scope of normal airline operations. *See Rombom*, 867 F.Supp. at 222; *see also Peterson*, 970 F.Supp. at 250. If the airline service was provided in a reasonable manner, however, the balance tips in favor of preemption. *See Rombom*, 867 F.Supp. at 222. The court concluded that "[i]f the tortious act did not occur during the service in question or the tortious act did not further the provision of a service in a reasonable manner, then the state tort claim should continue." *Id.*

■ Applying the *Rombom* test, the state law tort claims asserted in the instant action are not subject to preemption, as the activities at issue do not constitute airline services. Lewis's claims do not arise from Continental's ticketing, boarding, or baggage services. Instead, his tort claims are based on Continental's alleged involvement in the events surrounding his arrest and detention by the HPD. To the extent that the claims could be viewed as

affecting Continental's services, the effect is at best incidental and, therefore, preemption is precluded under the second step of the *Rombom* test. *See Peterson*, 970 F.Supp. at 250. Even if the claims were found to affect Continental's services directly, Lewis contends that the airline's conduct was unreasonable and outrageous. Thus, application of the third prong of the *Rombom* test also dictates against preemption. *See Rombom*, 867 F.Supp. at 221.

Although Lewis asserts that Continental committed a variety of torts, none of his claims alleges a wrongful exclusion from boarding or ticketing. In his negligence claim, Lewis alleges that Tisdel, "acting within the course and scope of her employment, negligently informed security officers that Mr. Lewis was a potential security risk and thus breached Continental's duty to Mr. Lewis" and that Continental was negligent in hiring its employees, which proximately caused Lewis's injuries. He also maintains that by acting "with such an entire want of care so as to raise the belief that [its] conduct was a result of conscious indifference to the rights and welfare of Mr. Lewis," Continental's behavior constituted gross negligence. Lewis additionally asserts that Continental caused his false arrest and malicious prosecution because Tisdel "acted in concert with the HPD in willfully detaining Mr. Lewis without his consent and without the authority of law" and acted with malice in instigating a criminal proceeding against him. He further contends that Continental's conduct rose to the level of intentional infliction of emotional distress, stating, "Tisdel was a Continental employee, acting within the course and scope of her employment and with the knowledge and approval of Continental's management, [and] acted intentionally and recklessly in causing Mr. Lewis to be falsely arrested and prosecuted. Her conduct was extreme and outrageous." In his assault claim, Lewis alleges that "Tisdel as a Continental employee, acting within the course and scope of her employment and with the knowledge and approval of Continental's management, intentionally and knowingly commanded, directed, advised, encouraged, procured, instigated, promoted, controlled, aided and abetted Globe, HPD and Houston in causing physical contact with Mr. Lewis when they knew or should have reasonably known [that Lewis] would regard the contact as offensive."

While Lewis's tort claims may relate tangentially to the ticketing, boarding, and baggage-handling services of Continental, any such connection is too tenuous to warrant preemption under 49 U.S.C. § 41713(b)(1). *See Smith*, 134 F.3d at 259; *Hodges*, 44 F.3d at 336; *Peterson*, 970 F.Supp. at 249. Rather than basing his action on a refusal by Continental to issue him a ticket or allow him to board another connecting flight, Lewis focuses his complaints on Continental's alleged involvement in his purportedly unlawful arrest and detention. Lewis maintains that Continental's actions were outrageous, going beyond the reasonable manner in which an airline should provide its services. Similar claims have been held to fall outside the scope of ADA preemption. *See Smith*, 134 F.3d at 259; *Peterson*, 970 F.Supp. at 250; *Chrissafis*, 940 F.Supp. at 1299; *Rombom*, 867 F.Supp. at 223. Clearly, Lewis's success on any of his state law claims "would not regulate the economic or contractual aspects of boarding." *See Smith*, 44 F.3d at 347. Moreover, enforcement of Lewis's state law claims would not interfere with federal law granting airlines the discretion necessary to safeguard passengers from possible threats to their security, as he does not complain of his exclusion from a flight *per se*. *See Hodges*, 44 F.3d at 336; *see also* 49 U.S.C. § 44902(b). Accordingly, Lewis's state law claims against Continental are not preempted by the ADA.

## C. *Federal Law Claims*

In his complaint, Lewis also asserts federal claims against Continental, apparently based on 42 U.S.C. § 1983, for the alleged

**416**

denial of his rights under the Fourth and Fourteenth Amendments. Because Continental urges only state law preemption in its motion and does not move to dismiss any of Lewis's federal claims, the court need not address those claims at this juncture.

IV. *Conclusion*

Accordingly, Continental's motion to dismiss is DENIED. Continental has not shown Lewis's state law tort claims to be preempted by the ADA. This action, therefore, shall proceed to trial on both his state and federal claims.