[Cite as *Eastman v. FedEx Corp.*, 2014-Ohio-4213.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100873**

## STEPHANIE EASTMAN

PLAINTIFF-APPELLANT

vs.

## FEDEX CORPORATION

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-796388

**BEFORE:** Boyle, A.J., Celebrezze, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** September 25, 2014

**ATTORNEYS FOR APPELLANT**

Charles V. Longo
Matthew D. Greenwell
Charles V. Longo Co., L.P.A.
25550 Chagrin Boulevard
Suite 320
Beachwood, Ohio   44122

**ATTORNEYS FOR APPELLEE**

Colleen D. Hitch Wilson
Robert R. Ross
3620 Hacks Cross Road
Building B
Memphis, Tennessee   38125

MARY J. BOYLE, A.J.:

**{¶1}** Plaintiff-appellant, Stephanie Eastman, appeals from the trial court's decision granting summary judgment to defendant-appellee, Federal Express Corporation ("FedEx"). She raises the following three assignments of error for our review:

1. The trial court erred when it granted defendant-appellee FedEx Corp.'s motion for summary judgment because plaintiff-appellant's claims are not preempted by the Airline Deregulation Act.

2. The trial court erred when it granted defendant-appellee FedEx Corp.'s motion for summary judgment because plaintiff-appellant presented sufficient evidence demonstrating that defendant-appellee FedEx Corp. is liable for their [sic] breach of contract.

3. The trial court erred when it granted defendant-appellee FedEx Corp.'s motion for summary judgment because plaintiff-appellant presented sufficient evidence demonstrating that defendant-appellee FedEx is liable for Consumer Sales Practice Act violations.

**{¶2}** Finding no merit to her appeal, we affirm.

<u>Procedural History and Factual Background</u>

**{¶3}** In November 2012, Eastman filed a complaint against FedEx, setting forth the following facts (none of which FedEx disputes). Eastman sold a diamond ring to Ashton Roberts for $6,850. In May 2010, Eastman contracted with FedEx to ship the diamond ring from a FedEx located in Beachwood, Ohio, to a FedEx located in Houston, Texas. Eastman shipped the ring using FedEx's priority overnight service, listing Roberts as the recipient. She requested that FedEx hold the package at the Houston location for pick up. Eastman also contracted with FedEx, using its collect on delivery

("C.O.D.") service, to collect a secured payment of $6,850 for the ring in the form of a cashier's check before releasing the ring.

{¶4} In her complaint, Eastman further alleged that Roberts hired a courier to pick up the diamond ring and deliver the cashier's check to FedEx. The courier delivered the cashier's check to FedEx and signed for the ring. FedEx delivered the cashier's check to Eastman. Eastman later learned from her bank that the cashier's check was fraudulent. Eastman brought claims against FedEx for negligence, breach of contract, and violations of Ohio's Consumer Sales Practices Act ("CSPA").

{¶5} FedEx moved for summary judgment in May 2013. In its summary judgment motion, FedEx argued that Eastman's negligence and CSPA claims were preempted by the Airline Deregulation Act. With regard to Eastman's breach of contract claims, FedEx argued that it was not liable because the contract specifically provided that Eastman was "solely responsible for any loss associated with a fraudulent check," and that FedEx did

> not breach the contract of carriage by delivering the ring to, and collecting a cashier's check from, a courier rather than the addressee, because the contract of carriage expressly allowed FedEx to deliver the ring to someone other than the designated recipient.

{¶6} The trial court granted FedEx's summary judgment motion. It is from this judgment that Eastman appeals.

## Standard of Review

{¶7} An appellate court reviews a decision granting summary judgment on a de novo basis. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241

(1996). Summary judgment is properly granted when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *State ex rel. Duganitz v. Ohio Adult Parole Auth.*, 77 Ohio St.3d 190, 191, 672 N.E.2d 654 (1996).

{¶8} The moving party carries an initial burden of setting forth specific facts that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant fails to meet this burden, summary judgment is not appropriate, but if the movant does meet this burden, summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact. *Id*. at 293.

<u>Airline Deregulation Act</u>

{¶9} In her first assignment of error, Eastman maintains that the trial court erred when it granted FedEx's summary judgment motion because her breach of contract, negligence, and CSPA claims are not preempted by the Airline Deregulation Act. FedEx concedes, and the trial court held, that one of Eastman's claims, namely, her breach of contract claim, is not preempted by the ADA. Thus, we must determine whether Eastman's remaining negligence and CSPA claims are preempted by the ADA.

{¶10} Until 1978, airlines were regulated by the Federal Aviation Act ("FAA"), which did not prohibit persons or entities from bringing common law or statutory claims against airlines. *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 222, 115 S.Ct. 817, 130

L.Ed.2d 715 (1995).   In 1978, however, Congress enacted the Airline Deregulation Act. *Id.*   The enactment was motivated by congressional belief that "'maximum reliance on competitive market forces'   would best further 'efficiency, innovation, and low prices' as well as 'variety [and] quality * * * of air transportation services.'"   *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (quoting the ADA).   To prevent "states from undoing federal deregulation with regulation of their own," Congress included a preemption clause in the ADA.   *Wolens* at 222 (internal quotation marks omitted).

{¶11} The ADA's preemption clause provides, in relevant part, that "a State * * * may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart."   49 U.S.C. 41713(b)(1).   The Supreme Court has broadly construed the statute's preemption clause, concluding that the "relating to" language means "having a connection with, or reference to, airline 'rates, routes, or services.'"   *Wolens* at 223, quoting *Morales* at 378.   It further explained that "enacting or enforcing any law 'relating to rates, routes, or services' is most sensibly read, in light of the ADA's overarching deregulatory purpose, to mean 'States may not seek to impose their own public policies or theories of competition or regulation on the operations of an air carrier.'"   *Id.* at 229.

{¶12} Applying the "connection with" or "reference to" standard, the *Morales* court held that the ADA preempted state enforcement of advertising regulations.   *Id*. at

391. The court reasoned that the advertising provisions related to fares within the meaning of the ADA not only because they expressly referred to them, but also because they reduced the incentive to price competitively. *Id*. at 388 ("'where consumers have the benefit of price advertising, retail prices often are dramatically lower than they would be without advertising.'").

{¶13} Similarly, in *Wolens*, the court held that the ADA preempted a claim that American Airlines' retroactive modification of its frequent-flyer program violated the Illinois Consumer Fraud and Deceptive Business Practices Act. *Wolens*, 513 U.S. 219, 222, 228, 115 S.Ct. 817, 130 L.Ed.2d 715. The court concluded with no difficulty that the "claims relate to 'rates,' i.e., American's charges in the form of mileage credits for free tickets and upgrades, and to 'services.'" *Id*. at 226.

{¶14} In *Wolens*, the court further held that contract claims relating to frequent-flyer benefits did not involve the enactment or enforcement of state laws, reasoning that the terms and conditions airlines offer and passengers accept are privately ordered obligations "and thus do not amount to a State's 'enactment or enforcement [of] any law, rule, regulation, standard or other provision having the force and effect of law.'" *Wolens* at 228-229 (citation omitted).

{¶15} After review, we agree with FedEx that Eastman's CSPA claims are preempted by the ADA. Eastman alleged that FedEx committed unfair and deceptive acts or practices by accepting money from her for a specific service, and then failing to comply with its own policies, representations, and practice. There is no question that

Eastman's FedEx claims "relate to" FedEx's service, and seek to "enforce an enactment" of Ohio's CSPA.   These facts are directly on point with the facts in *Wolens.*

{¶16} Whether Eastman's negligence claim is preempted by the ADA is a more difficult question.   Neither *Morales*, 504 U.S. 374, 378, 112 S.Ct. 2031, 119 L.Ed.2d 157, nor *Wolens* directly answers this question.   We point out that within her argument, Eastman does not argue that the trial court erred when it found that her negligence claim was preempted by the ADA.   She does not cite to any cases or make any argument that support her position that her negligence claims are not preempted by the ADA. Nonetheless, in the interest of providing a complete analysis, we will address this issue despite the deficiencies in her brief.

{¶17} Despite the limited applicability of the facts in *Morales* and *Wolens* to state tort claims, the Supreme Court has stated several principles helpful in applying the ADA's preemption clause.   First, even when Congress enacts an express preemption clause, its interpretation must begin with the "presumption that Congress does not intend to supplant state law."   *New York State Conference of Blue Cross & Blue Shield v. Travelers Ins. Co.*, 514 U.S. 645, 654, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995).   Second, there is clearly a limit to the breadth of the ADA's preemption clause because some state law claims may affect airline fares or services "in too tenuous, remote, or peripheral a manner to have preemptive effect."   *Morales* at 390 (internal quotation marks omitted). Finally, in drawing the line between preempted claims and tenuously related claims, courts should consider the purpose behind the preemption clause, which was to "promote

maximum reliance on competitive market forces" and prevent state interference with federal deregulation of airlines. *Wolens*, 513 U.S. at 230, 115 S.Ct. 817, 130 L.Ed.2d 715 (citing 49 U.S.C. 1302(a)(4)); *Charas v. Trans World Airlines, Inc*., 160 F.3d 1259, 1265 (9th Cir.1998).

**{¶18}** "The Sixth Circuit has not decided when to apply the ADA's preemption clause to state tort claims, and there is no consensus among the other circuits." *Universal Coin & Bullion, Ltd. v. FedEx Corp.*, W.D.Tenn. No. 12-2778, 2013 U.S. Dist. LEXIS 130431, *12 (Sept. 12, 2013), citing *Hammond v. N.W. Airlines*, E.D.Mich. No. 09-12331, 2009 U.S. Dist. LEXIS 110127 (Nov. 25, 2009). The court in *Universal Coin* went on to review how various federal courts have decided the issue, which we will quote in full because it thoroughly explains how some federal courts have interpreted and applied the ADA to state tort claims:

> The Ninth Circuit focuses on the economic deregulation of the airline industry, construing "services" narrowly on the basis that, "when Congress enacted *federal* economic deregulation of the airlines, it intended to insulate the industry from possible state economic regulation as well[.] It did not intend to immunize the airlines from liability for personal injuries caused by tortious conduct." *Charas*, 160 F.3d at 1266 (emphasis in original).

> The Seventh Circuit has similarly considered the economic impact of state claims, concluding that the ADA did not preempt claims by a travel agency alleging that an airline uttered slanderous statements because the claims did not directly relate to or have the "forbidden significant [economic] effect" on airline rates, routes, or services. *Travel All Over The World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1431 (7th Cir.1996) (citation omitted). *See also S.C. Johnson & Son, Inc. v. Transport Corp. of America, Inc.*, 697 F.3d 544, 553 (7th Cir.2012).

> The Third Circuit has also construed the ADA's preemption clause

to exclude from preemption state tort laws that do not have a "regulatory effect." *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 194 (3d Cir.1998). In *Taj Mahal Travel*, the court held that the ADA did not preempt state defamation claims because such claims do not "frustrate * * * deregulation by interfering with competition" and do not amount to "public utility-style regulation." *Id.*

The Fifth Circuit has applied the ADA's preemption clause by defining "services" to include only activities "appurtenant and necessarily included with the contract of carriage between the passenger or shipper and the airline." *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir.1995) (en banc). Under this view, "federal preemption of state laws, even certain common law actions 'related to services' of an air carrier, does not displace state tort action for personal physical injuries or property damage caused by the operation and maintenance of aircraft." *Hodges*, 44 F.3d at 336. In *Hodges*, the Fifth Circuit held that the ADA did not preempt a state tort claim against Delta Airlines for negligently allowing storage of a box in an overhead compartment because that storage was not an element "of the air carrier service bargain * * * such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself." *Id.* at 336, quoting *Hodges v. Delta Airlines, Inc.*, 4 F.3d 350, 354 (5th Cir. 1993). The *Hodges* court supported its narrow definition of "services" by citing other provisions of the airline regulatory code that require air carriers to carry insurance "for the loss of or damage to property of others, resulting from the operation or maintenance of aircraft." *Id.* at 338.

The Southern District of New York has concluded that three primary factors emerge from the case law construing the preemption clause. *Rombom v. United Air Lines, Inc.*, 867 F.Supp. 214, 221 (S.D.N.Y. 1994). The threshold question is (1) whether an activity at issue is an airline "service." If the activity is not a service, state laws are not preempted. If the activity is a service, the question is (2) whether the plaintiff's claims affect the service directly or merely tenuously. If the claim does affect the service directly, the court asks (3) whether "the underlying tortious conduct was reasonably necessary to the provision of the service." *Id.*

*Universal Coin* at *12-15.

{¶19} After reviewing the various federal district court and circuit court decisions, the court in *Universal Coin* concluded in its case that the ADA did not preempt Universal

Coin's state common law tort claims for the alleged mishandling of private customer information. It reasoned:

> Congress enacted the ADA's preemption clause to prevent states from burdening air carriers with invasive regulations that would frustrate the federal regulatory scheme. The ADA preempts state common law tort claims only when those claims are sufficiently related to the air carrier's rates, routes or services to "undo federal deregulation with regulation of their own." *See Wolens*, 513 U.S. at 222. Here, FedEx's alleged mishandling of UCB's customer information, which allowed the defrauding of UCB's customers and a significant reduction in sales, falls within the category of claims that are "too tenuous, remote, or peripheral" to aviation regulation to be preempted by the ADA. *See Morales*, 504 U.S. at 390.

*Universal Coin* at \*17-18.

**{¶20}** In the case before us, however, we conclude that Eastman's negligence allegations are sufficiently related to FedEx's "rates, routes, and services." Indeed, they relate directly — and only — to FedEx's C.O.D. service. Because of this, her negligence claims are not "too tenuous, remote, or peripheral," and are therefore preempted by the ADA.

**{¶21}** Accordingly, we agree with the trial court that Eastman's negligence and CSPA claims are preempted by the ADA. We therefore overrule Eastman's first assignment of error.

<u>Breach of Contract Claim</u>

**{¶22}** In her second assignment of error, Eastman argues that the trial court erred when it granted summary judgment to FedEx on her breach of contract claim.

**{¶23}** In support of its summary judgment motion, FedEx submitted an affidavit from Paula Cates, a senior paralegal employed in the legal department at its corporate

headquarters in Memphis, Tennessee. She averred that she had personal knowledge of, and was the custodian of, records that FedEx submitted in support of its motion. She also identified each document that was attached as a true and accurate copy of a business record of FedEx.

{¶24} FedEx submitted a copy of an air carrier certificate from the Federal Aviation Administration, establishing that FedEx Express "met the requirements of the Federal Aviation Act," was certified to operate as an air carrier, and was certified to "conduct common carriage operations in accordance with the Act."

{¶25} FedEx also attached a copy of the "C.O.D. airbill" that Eastman filled out when she shipped the diamond ring on May 10, 2010. Eastman listed Roberts as the recipient of the package. Rather than list Roberts's address, Eastman listed FedEx's Houston address and wrote "HOLD AT LOCATION." She filled in the "C.O.D. amount" as $6,850, and checked the box "secured payment" as the "acceptable payment type." Secured payment types included "money order, cashier's check, [or an] official check." Eastman chose cashier's check as her acceptable payment type.

{¶26} The front of the C.O.D. airbill stated that "[b]y using this airbill you agree to the service conditions on the back of this airbill and in our current service guide, including terms that limit our liability." Cates averred that the January 4, 2010 edition of FedEx's service guide was the service guide that was in effect at the time Eastman contracted with FedEx to ship the ring.

{¶27} The reverse side of the C.O.D. airbill listed "C.O.D. Terms and Conditions."

In the section, "Agreement to Terms," it states: "By giving us your package to deliver, you agree to all the terms on this Airbill and in our current Service Guide, which is available on request." In the section "C.O.D. Service/C.O.D Amount," it states that "All checks and money orders are collected at your risk, including risk of nonpayment and forgery."

{¶28} The FedEx service guide further explains terms and conditions related to "Collect on Delivery (C.O.D.) Service." It states that "[i]f the shipper marks SECURED PAYMENT on the C.O.D. airbill, we will collect a cashier's check, official check, or money order." It then states, "Checks (including cashier's, official, certified, business and personal checks) and money orders for the C.O.D. amount will be collected at the shipper's sole risk, including, but not limited to, all risk of nonpayment, fraud, and forgery. FedEx has no liability with respect to any such instrument."

{¶29} The FedEx service guide explains in its "Pickup and Delivery" section that "[w]e do not offer a restricted-delivery service and may deliver to someone other than the person or entity named as the recipient."

{¶30} With respect to the "Hold at FedEx Location" service selected by plaintiff at the time of the shipment at issue, Fedex.com advised customers that "A government-issued photo ID is required to pick up packages."

{¶31} In response to FedEx's summary judgment motion, Eastman attached the same C.O.D. airbill that FedEx attached to its motion. She further attached an unsworn affidavit, and what appeared to be unauthenticated documents that she obtained from

FedEx's website.  FedEx objected to Eastman's unsworn affidavit and unauthenticated documents, and the trial court refused to consider them.   Accordingly, this court will not consider Eastman's affidavit or unauthenticated documents either (although we note that even if we did consider them, they would not change the outcome of this appeal).

{¶32} The crux of Eastman's entire argument is that FedEx breached its contract with her because it permitted a courier, who her recipient hired, to pick up the package for the recipient from FedEx.   Eastman maintains that because FedEx released the package to the courier, she received a fraudulent cashier's check.

{¶33} After review, we conclude that there are no genuine issues of material fact as to whether FedEx breached its contract with Eastman; it did not.

{¶34} The contract at issue is the C.O.D. airbill.   On the front of the airbill, it states that the shipper agrees to the terms and conditions set forth on the back of the airbill, as well as the provisions stated in the current service guide.   The service guide that was in effect when Eastman contracted with FedEx explicitly states that FedEx "may deliver to someone other than the person or entity named as the recipient."   Further, the terms and conditions on the back of the airbill state that "[a]ll checks and money orders are collected at your risk, including risk of nonpayment and forgery."   The service guide repeats the same term, i.e., that FedEx bears no responsibility for the risk of nonpayment, including fraud and forgery.   These terms are not ambiguous.

{¶35} Eastman's argument that a question of fact remains because she did not declare the ring to be worth $1,000 is irrelevant.   According to the terms and conditions

set forth on the reverse side of the C.O.D. airbill, FedEx could have been liable had the ring been lost, misdelivered, not delivered, damaged, or if there had been a delay in delivery. FedEx also could have been liable had it not collected a check for the ring, or if it had collected the wrong type of payment or the wrong amount of payment. But none of those things occurred here. FedEx performed as it stated it would per the contract. It collected the cashier's check, delivered the ring, and delivered the check to Eastman. Eastman's claims are against Roberts, not FedEx.

**{¶36}** Eastman's second assignment of error is overruled.

**{¶37}** Eastman's third assignment of error is moot based on our analysis in the first assignment of error where we found that her CSPA claims were preempted by the ADA.

**{¶38}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, ADMINISTRATIVE JUDGE

FRANK D. CELEBREZZE, JR., J., and
MELODY J. STEWART, J., CONCUR